UNITED STATES ET AL. *v.* COUNTY OF FRESNO

No. 75–1262.   Argued November 8–9, 1976—Decided January 25, 1977*

---

*Together with *United States et al.* v. *County of Tuolumne,* also on appeal from the same court (see this Court's Rule 15 (3)).

*Howard E. Shapiro* argued the cause for the United States et al. On the brief were *Solicitor General Bork, Assistant Attorney General Crampton, Stuart A. Smith, Crombie J. D. Garrett,* and *David English Carmack.*

*James B. Waterman* argued the cause for appellee County of Fresno. With him on the brief was *Robert M. Wash. Stephen Dietrich, Jr.,* argued the cause and filed a brief for appellee County of Tuolumne.

MR. JUSTICE WHITE delivered the opinion of the Court.

The issue in this case is whether, consistent with the Federal Government's immunity from state taxation inherent in the Supremacy Clause of the United States Constitution, see *M'Culloch* v. *Maryland,* 4 Wheat. 316 (1819), the State of California may tax federal employees on their possessory interests in housing owned and supplied to them by the Federal Government as part of their compensation. We hold that it may.

I

The individual appellants in this case are employees of the Forest Service, a branch of the United States Department

of Agriculture responsible for administering the national forests. These appellants work in the Sierra, Sequoia, and Stanislaus National Forests which are located in Fresno and Tuolumne Counties in California. During the year 1967 each appellant lived with his family in a house which was built and owned by the Forest Service in one of these national forests. Appellants were required by the Forest Service to live in these houses [1] so that they would be nearer to the place where they performed their duties and so that they would be better able to perform those duties. Structurally, the houses were very similar to residential houses of the same size available in the private sector. The Forest Service viewed the occupancy of these houses as partial compensation for the services of its employees, and made a deduction from the salary of the employee for each two-week pay period in which the employee occupied such a house. The Forest Service fixed the amount of the deduction by estimating the fair rental value of a similar house in the private sector and then discounting that figure to take account of the distance between the Forest Service house and the nearest established community and the absence, if any, of any customary amenities in or near the house. [2] Adjustment was

---

[1] Some of the appellants were not required but simply permitted to live in houses owned by the Forest Service, in the sense that these particular appellants might have been able to live in a privately owned house outside the forest if they had so elected. However, the Forest Service required that *some* employee occupy each house owned by the Forest Service, and if no employee had volunteered, some employee, perhaps including some of these appellants, would have been required to live there. In light of our disposition of this case, the distinction between employees required to live in Forest Service housing and those permitted to live there is unimportant and we will not refer to it again.

[2] Examples of the amenities considered are, according to the testimony of a Forest Service official:

"Paved streets, street lighting at least at intersections, sidewalks, lawns, trees and landscaping, general attractiveness of the neighborhood, community sanitation services, reliability and adequacy of water safe for house-

also made for the fact that the Forest Service reserved the right to remove employees from their houses at any time, to enter the houses with or without notice for inspection purposes, and to use part or all of the houses for official purposes in an emergency.

Pursuant to 16 U. S. C. § 480, the States retain civil and criminal jurisdiction over the national forests notwithstanding the fact that the national forests are owned by the Federal Government. Under the California Revenue and Taxation Code, §§ 104, 107 (West 1970), and § 21 (b) of Title 18 of the California Administrative Code (1971), counties in California are authorized to impose an annual use or property tax on possessory interests in improvements on tax-exempt land.[3]

hold use, reliability of [sic] adequacy of electrical service, reliability and adequacy of telephone service, reliability and adequacy of fuel for heating, hot water and cooking, police protection, fire protection, unusual design features of a dwelling, absence of disturbing noises or offensive odors and standards of maintenance." App. 32.

[3] Section 107, Cal. Rev. & Tax. Code (West 1970), provides:

" 'Possessory interests' means the following:

"(a) Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person."

Title 18 Cal. Adm. Code § 21 (b) (1971) provides:

" 'Taxable possessory interest' means a possessory interest in nontaxable publicly owned real property, as such property is defined in section 104 of the Revenue and Taxation Code . . . ."

Section 104, Cal. Rev. & Tax. Code (West 1970), provides:

" 'Real estate' or 'real property' includes:

"(a) The possession of, claim to, ownership of, or right to the possession of land."

All parties agree that the national forests owned by the Federal Government are tax-exempt land by reason of the Supremacy Clause of the United States Constitution, e. g., United States v. Allegheny County, 322 U. S. 174 (1944), and that no tax may be imposed either on the land itself or on the United States.

With respect to non-tax-exempt land, California imposes a property tax on the owner. No tax is imposed directly on a renter of non-tax-

The Counties of Fresno and Tuolumne imposed such a tax on the appellants—Forest Service employees who live in the federally owned houses in the national forests located in those counties. In computing the value of the possessory interests on which the tax is imposed, the counties used the annual estimated fair rental value of the houses, discounted to take into account essentially the same factors considered by the Forest Service in computing the amount that it deducted from the salaries of employees who used the houses.[4]

Appellants paid the taxes under protest and they, together with the United States, sued for a refund in California courts in Fresno and Tuolumne Counties. They claimed, *inter alia,* that the tax interfered with a federal function—*i. e.,* the running of the Forest Service—that it discriminated against employees of the Federal Government, and that it was therefore forbidden by the Supremacy Clause of the United States Constitution. *E. g., M'Culloch* v. *Maryland, supra.* The trial courts each sustained appellants' claims, holding, *inter alia,* that appellants had no taxable possessory interest under state law. The California Court of Appeal, Fifth Appellate District, reversed, 50 Cal. App. 3d 633, 123 Cal. Rptr. 548 (1975) (*County of Fresno* case, followed in *County of Tuolumne* case (unreported)). It held that each appellant had a possessory interest in the houses owned by the Forest Service that was subject to taxation under state law. The court then held that the tax on such possessory interests is not a tax on the Federal Government, on Government property, or on a "federal function." Rather, it is a tax imposed on "the private citizen, and it is the

exempt land. However, the tax on the owner is presumably reflected in the rent and the renter may thus pay the tax indirectly.

[4] In computing the value of appellants' possessory interests on which the tax was imposed, Fresno County used the value of one year of occupancy. Tuolumne County used the present discounted value of five years' occupancy—the length of time which it estimated the average Forest Service employee remained in a Forest Service house.

private citizen's usufructuary interest in the government land and improvements alone that is being taxed. (*City of Detroit* v. *Murray Corp.,* 355 U. S. 489 . . . ; *United States* v. *Township of Muskegon,* 355 U. S. 484 . . . ; *United States* v. *City of Detroit,* 355 U. S. 466 . . . .)" *Id.,* at 640, 123 Cal. Rptr., at 552. Consequently, the court held, the tax is not barred by the Supremacy Clause of the Federal Constitution. The California Court of Appeal also rejected appellants' contention that the tax operates to discriminate against the Federal Government and its employees. The Supreme Court of California denied review. We noted probable jurisdiction to review the decision of the California Court of Appeal, 425 U. S. 970 (1976).

Appellants argue that the tax is "a levy upon the activities of the United States" because the occupancy of the houses by the Forest Service employees was "for the sole purpose of discharging their governmental function of running the national forests." Brief for Appellants 11. Consequently, the Government argues, the tax is forbidden by the doctrine announced in *M'Culloch* v. *Maryland,* that under the Supremacy Clause of the Federal Constitution the States may not tax the properties, functions, or instrumentalities of the Federal Government. We disagree with the Government, and affirm the judgment below.

## II

The Government relies principally on the landmark case of *M'Culloch* v. *Maryland.* There the State of Maryland imposed a tax on notes issued by "any Bank . . . established without authority from the State." [5] The only such bank in Maryland was the Bank of the United States, created and incorporated by Act of Congress in order to

---

[5] The tax was in the form of a forced purchase from a state official of stamped paper on which such notes were required to be printed. The tax could be avoided by an annual lump-sum payment to the state official of $15,000.

carry out Congress' enumerated powers. No similar tax was imposed on the issuance of notes by any other bank in Maryland. The Court held the tax to violate that part of the Federal Constitution which declares that the laws of the United States are the "supreme law of the land." An Act of Congress had created the bank in order to carry out functions of the National Government enumerated in the United States Constitution. The Court noted that the power to tax the bank "by the States may be exercised so as to destroy it," 4 Wheat., at 427, and consequently that the power to tax, if admitted, could be exercised so as effectively to repeal the Act of Congress which created the bank. If the State's power to tax the bank were recognized in principle, the Court doubted the ability of federal courts to review each exercise of such power to determine whether the tax would or would not destroy a federal function. Finally, the Court rejected the State's argument that the power to tax involves the power to destroy only where the taxing power is abused, and that the Court should simply trust the States not to abuse their power to tax a federal function just as it must trust a State not to abuse its power to tax its own citizens. The Court rejected the argument because the political check against abuse of the power to tax a State's constituents is absent when the State taxes only a federal function.[6] A State's constituents can

---

[6] The Court stated:

"[Normally in] imposing a tax the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation.

"The people of a State, therefore, give to their government a right of taxing themselves and their property, . . . resting confidently on the interest of the legislator, and on the influence of the constituents over their representative, to guard them against its abuse." 4 Wheat., at 428.

". . . When they tax the chartered institutions of the States, they tax their constituents; and these taxes must be uniform. But, when a State

be relied on to vote out of office any legislature that imposes an abusively high tax on them. They cannot be relied upon to be similarly motivated when the tax is instead solely on a federal function.

The Court was careful to limit the reach of its decision. It stated that its opinion does not

"extend to a tax . . . imposed on the interest which the citizens of Maryland may hold in this institution [the bank], *in common with other property of the same description throughout the State.*" *Id.,* at 436. (Emphasis added.)

Since *M'Culloch,* this Court has adhered to the rule that States may not impose taxes directly on the Federal Government, nor may they impose taxes the legal incidence of which falls on the Federal Government.[7] The decisions of

---

taxes the operations of the government of the United States, it acts upon institutions created, not by their own constituents, but by people over whom they claim no control." *Id.,* at 435.

Accordingly, the Court concluded:

"The result is a conviction that the States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared." *Id.,* at 436.

[7] Thus the Court invalidated a state law which required a seller of liquor to United States post exchanges to collect a markup—the practical equivalent of a tax—from the post exchange and to remit it to the State Tax Commission. *United States* v. *Mississippi Tax Comm'n,* 421 U. S. 599 (1975). There, although the tax was nominally collected from the seller, the legal incidence of the tax was said to fall on the United States because *state law* required it to be charged to and collected from the United States by the seller. See *First Agricultural Nat. Bank* v. *Tax Comm'n,* 392 U. S. 339 (1968). *Kern-Limerick, Inc.* v. *Scurlock,* 347 U. S. 110 (1954), heavily relied on by appellants, also stands only for the proposition that the State may not impose a tax the legal incidence of which falls on the

this Court since *M'Culloch* have been less uniform on the question whether taxes, the economic but not the legal incidence of which falls in part or in full on the Federal Government, are invalid.

For many years the Court read the decision in *M'Culloch* as forbidding taxes on those who had contractual relationships with the Federal Government or with its instrumentalities whenever the ϵ ʿect of the tax was or might be to increase the cost to the Federal Government of performing its functions.[8] In later years, however, the Court departed from this interpretation of *M'Culloch*. In *James* v. *Dravo Contracting Co.*, 302 U. S. 134 (1937), a contractor sought immunity from a state occupation tax measured by the gross receipts, insofar as those receipts had been received under a contract with the Federal Government. The Court declared the tax valid even if "the gross receipts tax may increase the cost to the Government" under the contract. *Id.*, at 160. So long as the tax is not directly laid on the Federal Government, it is valid if nondiscriminatory, *id.*, at 150, or until Congress declares otherwise. *Id.*, at 161. Similarly, in *Graves* v. *New York ex rel. O'Keefe*, 306 U. S. 466 (1939), the Court sustained a nondiscriminatory tax on the income of a federal employee, thereby overruling *Dobbins* v. *Commis-*

---

Federal Government. *Id.*, at 122. There the State imposed a sales tax on purchasers. Kern-Limerick, Inc., had a cost-plus contract with the Department of the Navy which provided that all purchases made in furtherance of the contract were made by the Department of the Navy, with Kern-Limerick acting only as its agent. The Court held that the question of who was the purchaser for state-tax purposes was a federal question, and it held the Department of the Navy to be the purchaser and the tax to be thus unenforceable. See also *Federal Land Bank* v. *Bismarck Lumber Co.*, 314 U. S. 95 (1941); *Van Brocklin* v. *Tennessee*, 117 U. S. 151 (1886).

[8] *E. g., Dobbins* v. *Commissioners of Erie County*, 16 Pet. 435 (1842) (holding unconstitutional a state tax on the income of a federal employee); *Panhandle Oil Co.* v. *Mississippi ex rel. Knox*, 277 U. S. 218 (1928) (hold-

*sioners of Erie County,* 16 Pet. 435 (1842).[9]  See also *Alabama* v. *King & Boozer,* 314 U. S. 1 (1941), overruling *Panhandle Oil Co.* v. *Mississippi ex rel. Knox,* 277 U. S. 218 (1928).

---

ing unconstitutional a sales tax imposed on one who made sales to the Federal Government); *Gillespie ˄ Oklahoma,* 257 U. S. 501 (1922) (holding unconstitutional a state income tax as it applied to income generated from property leased from the Federal Government). See also *United States* v. *Rickert,* 188 U. S. 432 (1903).

[9] In *Graves,* the Court said:

"The theory, which once won a qualified approval, that a tax on income is legally or economically a tax on its source, is no longer tenable." 306 U. S., at 480.

"[T]he only possible basis for implying a constitutional immunity from state income tax of the salary of an employee of the national government or of a governmental agency is that the *economic burden* of the tax is in some way passed on so as to impose a burden on the national government tantamount to an interference by one government with the other in the performance of its functions." *Id.,* at 481.  (Emphasis added.)

The Court rejected this economic burden as a justification for immunizing the employee from income taxation:

"[T]he purpose of the immunity was not to confer benefits on the employees by relieving them from contributing their share of the financial support of the other government, whose benefits they enjoy, or to give an advantage to a government by enabling it to engage employees at salaries lower than those paid for like services by other employers, public or private, but to prevent undue interference with the one government by imposing on it the tax burdens of the other.

"[A] non-discriminatory tax laid on the income of all members of the community could not be assumed to obstruct the function which [a government entity] had undertaken to perform, or to cast an economic burden upon them, more than does the general taxation of property and income which, to some extent, incapable of measurement by economists, may tend to raise the price level of labor and materials." *Id.,* at 483–484.

"So much of the burden of a non-discriminatory general tax upon the incomes of employees of a government, state or national, as may be passed on economically to that government, through the effect of the tax on the price level of labor or materials, is but the normal incident of

Finally, and for the purposes of this case dispositively, in *City of Detroit* v. *Murray Corp.*, 355 U. S. 489 (1958), *United States* v. *City of Detroit*, 355 U. S. 466 (1958), and *United States* v. *Township of Muskegon*, 355 U. S. 484 (1958), this Court sustained state use taxes on the use by private companies of machinery and other property owned by the United States and leased to them for use in their businesses—even though in two of these cases the companies had cost-plus contracts with the Government requiring the Government to reimburse them for state taxes paid by them. These cases make clear that a State may, in effect, raise revenues on the basis of property owned by the United States as long as that property is being used by a private citizen or corporation and so long as it is the possession or use by the private citizen that is being taxed. See also *Esso Standard Oil Co.* v. *Evans*, 345 U. S. 495 (1953).

The rule to be derived from the Court's more recent decisions, then, is that the economic burden on a federal function of a state tax imposed on those who deal with the Federal Government does not render the tax unconstitutional so long as the tax is imposed equally on the other similarly situated constituents of the State.[10] This rule re-

---

the organization within the same territory of two governments, each possessing the taxing power." *Id.*, at 487.

[10] The single arguable departure from this principle since 1937 is *United States* v. *Allegheny County*, 322 U. S. 174 (1944). There the Mesta Machine Company had a contract with the Federal Government to produce field guns for the War Department during 1941. Some of the machinery with which Mesta produced the guns was owned by the United States and was in the possession of Mesta. There were limitations on Mesta's right to use this machinery: Mesta's "leasehold interest [in the machines] is subject to some qualification of the right to use the property except for gun manufacture . . . and is perhaps burdened by other contractual conditions." *Id.*, at 186–187. Pennsylvania, the State in which Mesta's factory was located, imposed a property tax on Mesta's land and machinery attached thereto, including the machinery owned by the United States. This Court ruled the tax invalid,

turns to the original intent of *M'Culloch* v. *Maryland.* The political check against abuse of the taxing power found lacking in *M'Culloch,* where the tax was imposed solely on the Bank of the United States, is present where the State imposes a nondiscriminatory tax only on its constituents or their artificially owned entities;[11] and *M'Culloch* foresaw the unfairness in forcing a State to exempt private individuals with beneficial interests in federal property from taxes imposed on similar interests held by others in private property. Accordingly, *M'Culloch* expressly excluded from its rule a tax on "the interest which the citizens of Maryland may hold

---

stating: "Mesta has some legal and beneficial interest in this property. It is a bailee for mutual benefit. Whether such a right of possession and use in view of all the circumstances could be taxed by appropriate proceedings we do not decide. . . . [T]he state has made no effort to segregate Mesta's interest [in the machinery] and tax it. The full value of the property including the whole ownership interest, as well as whatever value proper appraisal might attribute to the leasehold, was included in Mesta's assessment." *Ibid.*

Insofar as *United States* v. *Allegheny County, supra,* holds that a tax measured by the value of Government-owned property may never be imposed on a private party who is using it, that decision has been overruled by *United States* v. *City of Detroit,* 355 U. S. 466 (1958), and its companion cases. See *id.,* at 495 (Frankfurter, J., concurring and dissenting). Insofar as it stands for the proposition that Government property used by a private citizen may not be taxed at its full value where contractual restrictions on its use for the Government's benefit render the property less valuable to the user, the case has no application here. Appellee counties have sought to tax only the individual appellants' interests in the Forest Service houses and have reduced their assessments to take account of the limitations on the use of the houses imposed by the Government.

[11] A tax on the income of federal employees, or a tax on the possessory interest of federal employees in Government houses, if imposed only on them, could be escalated by a State so as to destroy the federal function performed by them either by making the Federal Government unable to hire anyone or by causing the Federal Government to pay prohibitively high salaries. This danger would never arise, however, if the tax is also imposed on the income and property interests of all other residents and voters of the State.

[in a federal instrumentality] in common with other property of the same description throughout the State." 4 Wheat., at 436.

### III

Applying the rule set forth above, decision of this case is relatively simple. The "legal incidence" of the tax involved in this case falls neither on the Federal Government nor on federal property. The tax is imposed solely on private citizens who work for the Federal Government. The tax threatens to interfere with federal laws relating to the functions of the Forest Service *only* insofar as it may impose an economic burden on the Forest Service—causing it to reimburse its employees for the taxes legally owed by them or, failing reimbursement, removing an advantage otherwise enjoyed by the Federal Government in the employment market.[12] There is no other respect in which the tax involved in this case threatens to obstruct or burden a federal function. The tax can be invalidated, then, only if it discriminates against the Forest Service or other federal employees, which it does not do.[13]

Although .the tax is imposed by the appellee counties on renters of real property only if the owner is exempt from taxation—and consequently is not imposed on the vast majority of renters of real property in California—the tax is not for that reason discriminatory. In this respect this case is governed by *United States* v. *City of Detroit,* 355 U. S. 466 (1958). There the city of Detroit imposed a use tax on those who used tax-exempt property owned by the United States.

---

[12] The Federal Government would otherwise have had the power—enjoyed by no other employer—of giving its employees housing on which no property tax is paid by them either directly or indirectly as rent paid to a landlord who himself paid a property tax.

[13] The Government has expressly abandoned its claim, made below, that the tax treats federal employees who live in federally owned houses differently from state employees who lived in state-owned houses.

The tax was measured by the value of the property. With respect to nonexempt property, a similar tax was imposed on the owner and none on the user. In answering an argument that the tax discriminated against those dealing with the Federal Government, the Court said:

"As suggested before the legislature apparently was trying to equate the tax burden imposed on private enterprise using exempt property with that carried by similar businesses using taxed property. Those using exempt property are required to pay no greater tax than that placed on private owners *or passed on by them to their business lessees.*" *Id.,* at 473–474. (Emphasis added.)

Similarly, here the State of California imposes a property tax on owners of nonexempt property which is "passed on by them to their . . . lessees." Consequently, the appellants who rent from the Forest Service are no worse off under California tax laws than those who work for private employers and rent houses in the private sector.

The Government argues nonetheless that the appellants are required to occupy the houses owned by the Forest Service not for their own personal benefit but for the sole benefit of the Forest Service and that "[t]here is accordingly no constitutionally permissible way to isolate any 'personal residence' portion of these possessory interests that could be deemed to be unrelated to the official duties of these Forest Service employees." Brief for United States 18.[14] The argument is at odds with the Government's own concessions during this lawsuit, with its treatment of its employees apart

---

[14] If it were factually accurate that the use of Forest Service housing is of no personal benefit to appellants, the tax would discriminate against those who work for the Federal Government since California imposes no other tax on its citizens with respect to property in which those citizens have no beneficial personal or business interest. The tax would thus run afoul at least of the Supremacy Clause. *M'Culloch* v. *Maryland,* 4 Wheat. 316 (1819); *United States* v. *City of Detroit,* 355 U. S., at 473.

from this lawsuit, and with common sense. The Government's complaint in this case alleges that the occupancy of the Forest Service houses constitutes part of appellants' "compensation" for services performed—thus conceding that the occupancy is of personal benefit to the employee. At oral argument the Government conceded that a state income tax could be imposed on the employees for the value of the occupancy—thus conceding that its value to the employee is capable of being severed from its value to the Forest Service and of being accurately measured. The Forest Service itself purports to measure the personal benefit of the occupancy to the employee and collects rent in such an amount through deductions from the employee's paycheck. Since virtually everyone in this country pays for housing for himself or herself and family, common sense compels the conclusion that the occupancy of a house provided by an employer for an employee's family is of personal financial benefit to the employee—relieving him of the expense of paying for housing elsewhere.[15] The disadvantages attendant on living in Forest Service housing may affect the amount of the value of the house to the employee, but it is unquestionably of some value to him. Here both appellees have sought to take account of these disadvantages and to tax the employees only on the portion of the total value of the houses which may be properly attributed to *their* possessory interest. In this respect, the taxes are valid even under *United States* v. *Allegheny County,* 322 U. S. 174 (1944), see n. 10, *supra,* so heavily relied on by the Government. There the Court in-

---

[15] An attempt by California to impose a use tax on a Forest Service employee for his fire ax—which he used *only* in performing his job—or on a fire tower inhabited by such employee in the daytime and solely in order to perform his job would present a different question. The employee does not put either the ax or the tower to " 'beneficial personal use,' " and it is not part of his " 'profit' " or his " 'salary.' " *United States* v. *City of Detroit, supra,* at 471. See n. 14, *supra.*

validated a tax on use by a private corporation of Government-owned property because "the State has made no effort to segregate [the corporation's] interest and tax it." *Id.,* at 187. The Court stated, however:

> "Actual possession and custody of Government property nearly always are in someone who is not himself the Government but acts in its behalf and for its purposes. . . . His personal advantages from the relationship by way of salary, profit or *beneficial personal use* of the property may be taxed as we have held." *Id.,* at 187–188. (Emphasis added.)

This statement ripened into holdings in *United States* v. *City of Detroit, supra,* at 472, and *United States* v. *Township of Muskegon,* 355 U. S. 484 (1958). The only difference between *Township of Muskegon*—where Government-owned property was being used by a private corporation in complying with a Government contract—and this case is that there the property was being used by business for "profit" and here the property is being put to "beneficial personal use." Under the rule of *United States* v. *Allegheny County* and *United States* v. *City of Detroit,* this difference is inconsequential. The two types of interests are equally taxable.

In conclusion, as the Court said in *City of Detroit* v. *Murray Corp.,* 355 U. S., at 495:

> "There was no discrimination against the Federal Government, its property or those with whom it does business. There was no crippling obstruction of any of the Government's functions, no sinister effort to hamstring its power, not even the slightest interference with its property. Cf. *M'Culloch* v. *Maryland,* 4 Wheat. 316. In such circumstances the Congress is the proper agency, as we pointed out in *United States* v. *City of Detroit,* to make the difficult policy decisions necessarily involved in determining whether and to what extent pri-

vate parties who do business with the Government should be given immunity from states taxes."

*Affirmed.*

Mr. Justice Stevens, dissenting.

The application of the California possessory interest tax to federal employees' use of real estate located in a national forest is significantly different from other forms of state taxation and, in my opinion, creates the kind of potential for friction between two sovereigns that the doctrine of constitutional immunity was intended to avoid.

## I

If a State were to tax the income of federal employees without imposing a like tax on others, the tax would be plainly unconstitutional. Cf. *M'Culloch* v. *Maryland,* 4 Wheat. 316. On the other hand, if the State taxes the income of all its residents equally, federal employees must pay the tax. *Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466. This case involves a tax more like the former than the latter and, in my opinion, is invalid.

There are two alternatives between the two extremes just posited. Instead of just taxing federal employees, the State might impose a special tax on both state and federal employees but no one else; or, making the tax base somewhat broader, the State might impose a special tax on employees of all tax-exempt entities, including private organizations. Arguably, in the latter situation, the tax would affect enough voters in the State to provide the type of political safeguard envisioned in *M'Culloch* and thereby protect federal employees from the risk of disparate treatment. In the former situation, however, that protection might be illusory because the sovereign imposing the tax could adjust the compensation of its own employees to avoid any special tax burden on them and thereby cause the tax to have a significant im-

pact on federal employees and no one else. Under the rationale of *M'Culloch,* the Supremacy Clause protects federal employees, as well as federal instrumentalities, from that kind of potential discrimination.

## A

The California possessory interest tax discriminates against the individual appellants as compared with persons who rent private, nonexempt property. The Federal Government has adopted a policy of charging its employees a rent equal to the fair rental value of their residences as determined by the prevailing rental value of comparable residences in the vicinity of the national forest.[1] A federal employee residing in a Forest Service residence and a private tenant residing in a comparable home both pay the same rent. But the federal employee also pays a possessory interest tax while the private tenant does not pay that tax or any other real estate tax.

The amount of the possessory interest tax paid by the federal employee is not determined by his rent. Whether the rent collected by the Forest Service is over, under, or equal to the fair rental value of the premises, the employee's tax is the same.[2] For the tax is measured by the value of his possessory interest in the real estate, and, under the valuation systems employed by the counties, that value is the same regardless of whether the Federal Government elects to subsidize, in whole or in part, its employee's use of the property. The analogy, *ante,* at 466, to a state income tax

---

[1] The court below endorsed the undisputed finding of the trial court that this policy was in effect at the time this litigation arose, 50 Cal. App. 3d 633, 637, 123 Cal. Rptr. 548, 550 (1975).

[2] It is true, as the majority notes, *ante,* at 466, that appellee counties have sought to tax the individual appellants only on that portion of the total value of the residences which may be properly attributed to their personal, non-job-related, possessory interest. This fact affects the *amount* of the tax but not its discriminatory character.

on compensation provided by means of permission to use property for less than its fair rental value is therefore inapplicable.[3]

The discrimination between the federal employee and the private tenant is not eliminated by the fact that the *owner* of the private residence pays a real estate tax which the Federal Government does not. The private owner's tax obligation is one of the factors that determines the fair rental value of his property—and, no doubt, the fair rental value of Government-owned property as well—but it is not correct to say that the owner's tax is paid by the tenant. When the private and the public tenant are both charged the same rent, a special tax on the latter is surely not justified by the Federal Government's tax exemption.[4] To the extent that the exemption has significance, it provides a limit on the State's taxing power; it cannot provide an affirmative justification for an otherwise invalid tax.[5] In short, federal em-

---

[3] Although the Federal Government's complaint alleged that the occupancy of the residences constituted part of appellants' "compensation," the proof established that the Forest Service charged its employees the fair rental value of similar houses in the private sector. The state courts so found, see n. 1, *supra*.

[4] The fact that the Federal Government receives higher net rents than those received by private landlords is a consequence of its tax-exempt status which avoids one of the burdens of ownership of property regardless of how the Government elects to use its property.

[5] The majority states that the only burden the tax imposes on the Forest Service is economic—causing it to reimburse its employees for "the taxes legally owed by them" or, failing reimbursement, removing an advantage otherwise enjoyed by the Government in the employment market, *ante*, at 464. But an attempt to reimburse all federal employees for taxes legally owed would entail a great deal more than the economic burden represented by the value of the taxes. Appellees Fresno and Tuolumne Counties have different methods of computing the value of the possessory interest, *ante*, at 456 n. 4. Once these counties determine the assessed valuation of the possessory interests, presumably they apply different tax rates to determine the actual dollar value of each appellant's tax. The Forest Service owns residences in many coun-

ployees like these appellants are required to pay a discriminatory tax; *Graves* v. *New York ex rel. O'Keefe, supra,* does not control this case.

## B

This California tax does not even apply to all users of tax-exempt property. By its terms the possessory interest tax applies only to "publicly owned real property." [6]    It does not, for example, apply to the residential use of real estate owned by private hospitals, schools, or religious organizations, all of which are exempt from taxation under the laws of California.[7]    In fact it appears that the only individuals who are similar to the federal employees with respect to the possessory interest tax are state employees living in state-owned houses.    But since the State of California, and its political subdivisions, can fix their rent, the State has the practical power to adjust the economic burden of the possessory interest tax assessed against its own tenant employees. Potentially, therefore, the tax may have a practical effect on the Federal Government and its employees which is different

---

ties throughout the United States. The administrative burden of determining the correct amount of tax owed on each unique residence operating under myriad payment systems and due dates would be immense. In my judgment, this administrative cost provides another reason why this exercise of a State's taxing power runs afoul of the Supremacy Clause. Moreover, I do not believe the State's power can be exercised in a manner which requires the Federal Government to surrender its own tax exemption in order to protect its employees from a discriminatory tax. I do not understand the relevance of the Federal Government's so-called advantage in the employment market.

[6] Title 18 Cal. Adm. Code § 21 (b) (1971), quoted *ante,* at 455 n. 3.

[7] See *Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal. 2d 729, 221 P. 2d 31 (1950) (private hospital); *Church Divinity School* v. *County of Alameda,* 152 Cal. App. 2d 496, 314 P. 2d 209 (1957) (college-level private school); *Serra Retreat* v. *County of Los Angeles,* 35 Cal. 2d 755, 221 P. 2d 59 (1950), and *Saint Germain Foundation* v. *County of Siskiyou,* 212 Cal. App. 2d 911, 28 Cal. Rptr. 393 (1963) (religious organizations).

from its effect on the owners or users of any other tax-exempt property in the State.

Thus, whether the federal tenants are compared with persons occupying property owned by taxpayers or with persons occupying other tax-exempt property, they are vulnerable to a discriminatory tax.

## II

Whereas the California tax scheme creates a discrimination between users of property that would not otherwise exist, the Michigan taxes upheld in *United States* v. *City of Detroit,* 355 U. S. 466; *United States* v. *Township of Muskegon,* 355 U. S. 484; and *City of Detroit* v. *Murray Corp. of America,* 355 U. S. 489, were designed to eliminate disparity in the tax treatment of different users of similar property. The Michigan taxes were designed to equalize the tax burden of competing commercial enterprises whether they used tax-exempt or taxable property in the conduct of their businesses.[8]

The Michigan tax at issue in the first two cases applied to every private party using any type of exempt property in the State. The tax base included not only property owned by the Federal and State Governments, but also all privately owned exempt real estate. In the first case the Court expressly relied on the undisputed evidence that lessees of other exempt property were being taxed as foreclosing any claim of discrimination against those using federal property. 355 U. S., at 474. In the third case, the tax was a general personal property tax which was applied indiscriminately throughout the State, 355 U. S., at 494.

---

[8] "The United States asks this Court to strike down as unconstitutional a tax statute of the State of Michigan as applied to a lessee of government property. In general terms this statute, Public Act 189 of 1953, provides that when tax-exempt real property is used by a private party in a business conducted for profit the private party is subject to taxation to the same extent as though he owned the property." *United States* v. *City of Detroit,* 355 U. S., at 467.

The critical importance of the absence of any discrimination in the Michigan scheme, and its sharp contrast with the California scheme challenged in this case, are both apparent from this passage:

"It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals. Cf. *M'Culloch* v. *Maryland,* 4 Wheat. 316. But here the tax applies to every private party who uses exempt property in Michigan in connection with a business conducted for private gain. Under Michigan law this means persons who use property owned by the Federal Government, the State, its political subdivisions, churches, charitable organizations and a great host of other entities. The class defined is not an arbitrary or invidiously discriminatory one. As suggested before the legislature apparently was trying to equate the tax burden imposed on private enterprise using exempt property with that carried by similar businesses using taxed property. Those using exempt property are required to pay no greater tax than that placed on private owners or passed on by them to their business lessees. In the absence of such equalization the lessees of tax-exempt property might well be given a distinct economic preference over their neighboring competitors, as well as escaping their fair share of local tax responsibility." *United States* v. *City of Detroit, supra,* at 473–474 (footnote omitted).

The case now before us does not involve any question of economic preference between competing private parties. Indeed, unlike the Michigan cases in which the Court identified as "vital" the fact that the taxpayers were engaged in commercial activities,[9] this case only involves an application of the

[9] "The vital thing under the Michigan statute, and we think permissibly so, is that Continental was using the property in connection with its own

California tax to the use of Government property in the performance of a traditional governmental function: managing the national forests. The Government requires the taxpayer-forester to occupy the property. The Michigan opinions do not hold or imply that required Government service is comparable to private commercial activity. Indeed, as I read those opinions, they direct us to focus on the question whether there is equality or inequality between *users* of public and private property. The Michigan tax was valid because there was no discrimination between users; the California tax is invalid because it creates such inequality.

## III

This case is not squarely controlled by *M'Culloch* v. *Maryland,* because this tax applies to the use of state as well as federal property.[10] Apparently, employees of state

---

commercial activities. The case might well be different if the Government had reserved such control over the activities and financial gain of Continental that it could properly be called a 'servant' of the United States in agency terms. But here Continental was not so assimilated by the Government as to become one of its constituent parts. It was free within broad limits to use the property as it thought advantageous and convenient in performing its contracts and maximizing its profits from them." *United States* v. *Township of Muskegon,* 355 U. S., at 486.

The Michigan tax at issue in the first two cases applied only to use in connection with a business conducted for profit, *United States* v. *City of Detroit,* 355 U. S., at 467–468, n. 1.

See also *City of Detroit* v. *Murray Corp. of America,* 355 U. S., at 493, where there is emphasis on the fact that the taxpayer used the Federal Government's personal property "in the course of its own business."

[10] In *M'Culloch* v. *Maryland,* the State taxed notes issued by the Bank of the United States differently from any other property. But if the state tax in that case had applied to a national bank and also to a group of state-operated institutions which the State could subsidize in order to eliminate the economic burden of the tax—but to no other taxpayers—it surely would have been equally invalid. In such a situation, as in *M'Culloch* itself and as in this case, the federal instrumentality

parks are treated like employees of national forests. If this is sufficient to save the tax, I would suppose the State could tax a soldier's use of Army barracks if the State also taxed its police officers whenever they resided in state quarters. Such a tax, I submit, would be patently invalid for reasons which also apply to this case. It would have an impact on federal servants different from its impact on most constituents of the taxing sovereign; and it would create a significant potential conflict between the interests of two sovereigns in the same territory.

As explained by Mr. Justice Frankfurter in his separate opinion in *City of Detroit* v. *Murray Corp. of America,* 355 U. S., at 503–504:

> "A principle with the uninterrupted historic longevity attributable to the immunity of government property from state taxation has a momentum of authority that reflects, if not a detailed exposition of considerations of policy demanded by our federal system, certainly a deep instinct that there are such considerations, and that the distinction between a tax on government property and a tax on a third person for the privilege of using such property is not an 'empty formalism.' The distinction embodies a considered judgment as to the minimum safeguard necessary for the National Government to carry on its essential functions without hindrance from the exercise of power by another sovereign within the same territory. That in a particular case there may in fact be no conflict in the exercise of the two governmental powers is not to the point. It is in avoiding the potentialities of friction and furthering the smooth operation of complicated governmental machinery that the constitutional doctrine of immunity finds its explanation and justification."

---

would have been vulnerable to discriminatory treatment by the State different from that accorded to the State's own constituents.

The specific distinction which Mr. Justice Frankfurter draws in that paragraph appears to support the validity of the California tax on the use by "a third person" of real estate in a national forest. I do not, of course, know whether Mr. Justice Frankfurter would have regarded a Government employee, like the appellants in this case, as the kind of "third person" whose use of federal property in the performance of a traditional governmental function would be taxed. I am convinced, however, that the principle which he articulated supports the immunity claim of these appellants. I therefore respectfully dissent.