**UNITED STATES of America, Plaintiff,**

**v.**

**STATE OF COLORADO, Jefferson County, Colorado, Board of County Commissioners of Jefferson County, Colorado, and David R. Braden, County Assessor, Jefferson County, Colorado, Defendants.**

**Civ. A. No. 76 M 1189.**

United States District Court, D. Colorado.

Nov. 28, 1978.

---

declaratory judgment that taxes assessed and levied under the authority of a Colorado Statute upon real and personal property located at a facility known as the Rocky Flats Plant in Jefferson County, Colorado, infringe upon the immunity of the United States from state and local taxation in violation of the Constitution of the United States. Jurisdiction exists under 28 U.S.C. § 1345. The defendants initially moved to dismiss for lack of standing and that motion was denied because the question of standing was dependent upon the merits of the plaintiff's position. A stipulation of facts was filed on October 13, 1977 and upon those facts the respective parties filed motions for summary judgment on the questions of applicability of the subject state statute and the Government's claim of immunity. An additional claim of discriminatory application of the statute has been deferred.

## AGREED FACTS

Because the parties have agreed that this court can determine the merits of the principal controversy under the provisions of Rule 56 of the Federal Rules of Civil Procedure, it is not necessary to set forth all of the material facts. Accordingly, the full stipulation of October 13, 1977 is incorporated by this reference and only those facts which are necessary to an articulation of the reasoning and results reached are set out here.

The Atomic Energy Commission (AEC) was created as an independent agency of the United States Government by the Atomic Energy Act of 1946 and continued under the Atomic Energy Act of 1954. The AEC was abolished by the Energy Reorganization Act of 1974 and certain of its functions were transferred to the Energy Research and Development Administration (ERDA), effective January 19, 1975. One of those functions was and is the direction of the activities of the Albuquerque Operations Office (ALO) relating to the research, development, and production of nuclear weapons for national defense.

Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo., John F. McNett, Asst. Chief Counsel, U. S. Energy Research and Development Administration, Albuquerque, N. M., John J. McCarthy, Chief, Civil Trial Section, Central Region Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

J. D. MacFarlane, Atty. Gen. of Colo., and David E. Engdahl, Sp. Asst. Atty. Gen., Denver, Colo., for defendant State of Colorado.

Patrick R. Mahan, County Atty., Jefferson County, and Gail E. Shields, Asst. County Atty., Golden, Colo., for defendants other than State of Colorado.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This is an action brought by the United States under 28 U.S.C. § 2201 to obtain a

Under the Department of Energy Organization Act, Public Law 95–91, ERDA was abolished and all of its functions, including all of the activities of the ALO were transferred to the Department of Energy (DOE), effective October 1, 1977. That change has no effect upon the issues in this litigation and, for convenience, reference is made to ERDA throughout this opinion.

In 1951 the United States acquired approximately 2,500 acres of land in Jefferson County, Colorado, as the site for certain production facilities with related buildings and structures which came to be known as the Rocky Flats Plant. Additional land was acquired in 1974 and 1975 and the production facilities with related structures were expanded. At the time relevant to this lawsuit, the Rocky Flats Plant consists of approximately 6,500 acres of land and approximately 95 buildings and structures, all of which are owned in fee simple by the United States.

Rocky Flats is and always has been part of an integrated system of Government-owned laboratories and plants operated in furtherance of the responsibilities of AEC and ERDA to develop and produce nuclear weapons for national defense. The production of certain components for nuclear weapons has always been the primary mission of the Rocky Flats Plant. While other incidental research, development and production functions have taken place there, such activity has been carried on only to the extent that ERDA has specifically directed it and provided appropriate Government funds. No work of any kind on behalf of any private entities has ever been or is now undertaken or carried out at the plant.

The actual operation and direct management of the Rocky Flats Plant have been accomplished through private companies under management contracts with AEC and ERDA. The Dow Chemical Company (Dow) managed and operated the plant from July 1, 1952 through June 30, 1975. Rockwell International Corporation (Rockwell) undertook that responsibility beginning on July 1, 1975 under a contract which, as modified, is now designated Contract EY–76–C–04–3533. (Contract 3533), a complete copy of which is included in the agreed record in this case.

The administration of that contract and the previous agreements with Dow has been the responsibility of ALO, which has always maintained a subordinate field office located at the plant. There are approximately 60 ERDA employees at that field office performing such administrative activities as budget and financial management, review and appraisal of procurement, property management, safety, security, industrial relations and inspection and acceptance of the final products produced by Rockwell for ERDA.

ERDA provides, directly from the United States Treasury through the letter-of-credit method of advanced funding, all of the funds necessary to sustain the operation of the Rocky Flats Plant under Contract 3533 and no funds come from Rockwell. The United States owns all tangible personal property of every kind and description used in the operation of the Rocky Flats Plant, including ingredients and components used in all plant operations and all property used in the production process. No property of Rockwell is used or required to be used in these operations. All valid obligations incurred in furtherance of the operations of the plant are recognized as Government liabilities and while the usual practice is for payments to be made by Rockwell from ERDA funds in ERDA bank accounts, ERDA may elect to make payment directly to the obligees. Rockwell's entire role or relationship to the Rocky Flats Plant is defined in Contract 3533.

In general, the agreement is that Rockwell provides the services of its employees in exchange for the payment of a fixed fee which is negotiated annually. Rockwell's fixed fee for the period July 1, 1975 through September 30, 1976 was $2,850,000.00 and for the period October 1, 1976 through September 30, 1977 the fee was $2,400,000.00. Because Rockwell bears none of the costs, the fixed fee may be considered its profit from the operation.

The basic raw material for the nuclear components produced at the Rocky Flats Plant is plutonium which is "special nuclear material" as defined in Section 11(aa) of the Atomic Energy Act (42 U.S.C. § 2014(aa)). The scope of the primary production activity carried on at the Rocky Flats Plant is subject to the express consent and direction of the President of the United States which must be obtained at least once each year under 42 U.S.C. § 2121(a)(2) and it is only in accordance with such authorization that ERDA issues directions to Rockwell to manufacture products according to the specifications and in the quantities prescribed. Any products which do not meet such specifications are recycled or otherwise disposed of according to ERDA directions and at its sole expense, without any loss of fee or other penalty to Rockwell. During the times in issue here the plant has operated at no more than 28% of capacity.

The fixed fee payment is the only direct financial profit which Rockwell receives from the plant. While the experience gained by Rockwell personnel could be considered to be of indirect benefit to its private commercial operations, such intangible benefits are not subject to any monetary valuation and Rockwell has no private commercial operation comparable to the work done at the Rocky Flats Plant.

The Colorado General Assembly enacted Senate Bill No. 86, now C.R.S.1973, § 39–3–112, as amended, effective January 1, 1976. In pertinent part that statute provides:

> (1) When any property . . . exempt from taxation is leased, loaned, or otherwise made available to and used by a . . . corporation in connection with a business conducted for profit, the lessee or user thereof shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property . .

Upon the authority of that statute the Jefferson County Tax Assessor notified Rockwell by a letter dated May 27, 1976 that it was the "user" of property which for the taxable year 1976 was given a market value of $200,787,951.00 and an assessed value of $61,263,380.00. The components of those totals were given as follows:

| | Market Value | Assessed Value |
|---|---|---|
| Land: 350 A at $5,000/A | $ 1,750,000 | $ 552,000 |
| Improvements: | 125,506,215 | 38,651,860 |
| Mach. & Equip. | 73,531,736 | 22,059,520 |
| Total | $200,787,951 | $61,263,380 |

The assessor used figures and other information provided by ERDA representing the book value of the improvements to the land, buildings and structures, utilities and equipment at the Rocky Flats Plant as of April 30, 1976. Those Government figures did not include land values and it is not clear from the record how the determination of market value of the land was made. Rockwell was billed $4,632,246.69 for taxes payable to Jefferson County, Colorado for the year 1976 and all of the administrative remedies were exhausted before this suit was filed.

## THE LAW

The defendants' position is that this case is controlled by the decision in *United States v. Boyd*, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964). There, Union Carbide Corporation and H. K. Ferguson Company brought suit in a Tennessee Court to recover sales and use taxes paid under protest. The United States joined as co-complainant. Both taxpayers had cost-plus fixed fee contracts with the AEC for construction and operations activities at the Oak Ridge, Tennessee facility. The Supreme Court of Tennessee in a written opinion reported at 363 S.W.2d 193 (1962) concluded that because the contractors' purchases were made with funds advanced by the Government and because title to all property purchased passed directly from the vendors to the Government, the imposition of the Tennessee sales tax was an invalid direct tax upon the Government under the doctrine of implied immunity first found in *M'Culloch v. Maryland*, 4 Wheat. 316, 4 L.Ed. 579 (1819). The Tennessee Court reached a different result as to application of the Tennessee

Use Tax. Having determined that the companies were independent contractors and not agents of the AEC, the Court found that they were subject to the Tennessee Tax imposed upon the privilege of use by a contractor of tangible personal property, without regard for title, where such property had not previously borne a sales tax.

In affirming that result, the United States Supreme Court agreed that the companies had a "separate taxable interest" in the Oak Ridge operation. 378 U.S. 39 at 44–45, 84 S.Ct. 1518, 12 L.Ed.2d 713. Because the Supreme Court also agreed that these cost-plus contractors were not so incorporated into the governmental structure as to become instrumentalities of the United States, their separate interests were not protected by governmental immunity. The Supreme Court seems to have accepted, without discussion, the implicit notion that a percentage tax on the cost of materials and supplies obtained by the contractors with Government funds would constitute an appropriate measure of such separate interests.

This case is quite different from *Boyd* because Colorado has made no effort to identify or to separate the Government's ownership interest from Rockwell's beneficial use of the property at Rocky Flats. The Jefferson County Assessor simply applied the statutory assumption that the value to the contractor was identical with the value to the owner.

The error of the defendants' position becomes apparent by comparing the amount of the tax with the fixed fee payment to Rockwell. Here Rockwell is being called upon to pay a tax which is almost double the amount of the total payment for its contract services. It is inconceivable that the value of an independent contractor's beneficial use interest in Government property can be considered to be so much greater than the amount which the Government is willing to pay to that contractor. The fact that it is Rockwell's contractual right to pass on that burden to the Government does not save the conceptual incongruity of this tax.

Under *Boyd, supra,* Contract 3533 can be considered to be an arrangement for the mutual benefit of Rockwell and the United States. The Supreme Court has said there is no constitutional impediment to state and local taxation of the benefit to Rockwell as measured by its separate interest in the Government-owned property used in the performance of the contract. When, however, a tax is imposed upon the whole value of the property, it is obvious that the tax is also being imposed upon the Government's interest and that is contrary to the Constitution.

The most recent Supreme Court opinion concerning the immunity from state taxation inherent in the Supremacy Clause is *United States v. County of Fresno,* 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977). There the Court approved a California statute which authorized counties to tax private interests in publicly owned property where the taxable possessory interest was measured by the fair rental value. Specifically, the case involved employees of the United States Forest Service who were required to live in Government-owned houses located in national forests. The Government recognized a benefit to the employees by taking deductions from their salaries of amounts which reflected the fair rental value of similar privately owned houses, discounted by the disadvantages of location and lack of amenities. Essentially the same factors were used by the counties in computing the values of the possessory interests on which the taxes were imposed. Accordingly, the measure of the tax was proportionate to the degree of the beneficial use by the employees and no part of the tax was upon the Government's interest in the property.

Here, the Jefferson County Assessor made no effort to segregate Rockwell's interest in Rocky Flats and limit the tax to that interest. Indeed, the state statute itself appears to preclude that possibility because it provides that the user shall be subject to taxation "in the same amount and to the same extent" as if it were the

owner of the property.[1] That is nothing less than a general ad valorem property tax imposed on United States property. It is a tax on the property itself rather than on Rockwell's beneficial use of it.

It was just such a tax which was invalidated in *United States v. Allegheny County*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944). There, a manufacturing company under contract to produce guns for the War Department used Government-owned machinery to supplement its existing plant facilities. The county tax assessor valued that machinery and included it in the assessment of the private plant which was then taxed as a unit. The tax law was held to be invalid insofar as it was interpreted to authorize taxation of the property interest of the United States, or to use that interest to enhance the tax upon the company. Pointing out that the state had "made no effort to segregate [the company's] interest and tax it," the Court raised but did not decide the question of whether a separate and identified beneficial use of such property could be taxed by appropriate proceedings. 322 U.S. at 187, 64 S.Ct. at 915.

The *Allegheny* decision was discussed by the Supreme Court in Footnote 10 of the *Fresno* opinion. There the Court observed that *United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958) and its companion cases had overruled *Allegheny* insofar as it could be understood to hold that a tax measured by the value of Government-owned property may never be imposed on a private party who is using it. However, the Court recognized the continuing vitality of the *Allegheny* decision with respect to the need for segregating any beneficial and taxable interest from the full value of Government-owned property where there are limitations imposed on the use of that property:

> Insofar as [*Allegheny*] stands for the proposition that Government property used by a private citizen may not be taxed at its full value where contractual restrictions on its use for the Government's benefit render the property less valuable to the user, the case has no application here. Appellee counties have sought to tax only the individual appellants' interests in the Forest Service houses and have reduced their assessments to take account of the limitations on the use of the houses imposed by the Government.

429 U.S. 452 at 463 n.10, 97 S.Ct. 699, at 705, 50 L.Ed.2d 683.

By taxing the totality of the land, improvements and personal property used in the operations of the Rocky Flats Plant, without accounting for any of the imposed limitations on Rockwell's use of the property, the defendants have subjected the property and activities of the Federal Government to state and local taxation and thereby infringed upon the immunity of the United States from the imposition of taxes on its own property.

Having determined that the subject taxes are contrary to the Constitution and that the Colorado statute does not admit of any approach different from that which was taken by the county assessor here, it must be concluded that the plaintiff is entitled to the entry of a summary judgment holding that the state statute as applied to the Rocky Flats Plant is unconstitutional and it is not necessary to consider the remaining question of whether there has been any discriminatory application of the statute.

Upon the foregoing, it is

ORDERED that the Clerk shall enter a declaratory judgment in accordance with this memorandum opinion and order, and award the plaintiff's costs to be taxed.

---

1. C.R.S.1973 § 39–3–112(1), as amended.

   It is interesting that the Colorado General Assembly took a different approach to the recreational use of federal lands. Subsection (6) of this statute provides:

   The valuation for assessment of lands owned by the United States and used for recreational purposes shall be thirty percent of the fees paid by the user of said lands to the United States for the use thereof in the previous calendar year.