TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 91-1210 |
| of | : | |
| | : | MAY 7, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |

---

THE CALIFORNIA PUBLIC UTILITIES COMMISSION has requested an opinion on the following question:

May a city levy a transient occupancy tax upon a state employee who, while on state business, contracts for a hotel room and submits payment for the room with a state issued check?

## CONCLUSION

A city may levy a transient occupancy tax upon a state employee who, while on state business, contracts for a hotel room and submits payment for the room with a state issued check.

## ANALYSIS

Subdivision (a) of section 7280 of the Revenue and Taxation Code[1] provides in part:

"The legislative body of any city or county may levy a tax on the privilege of occupying a room or rooms in a hotel, inn, tourist home or house, motel, or other lodging unless the occupancy is for any period of more than 30 days."

In 46 Ops.Cal.Atty.Gen. 16 (1965) we concluded that federal, state, and local officials, while traveling on official business, would be subject to what is commonly termed a "transient occupancy tax" regardless of the fact that their employing agency reimbursed them for travel expenses, whether in the form of per diem, mileage, or in accordance with the actual expenses incurred.[2] We left open the question, however, whether a different conclusion would be reached if, in addition, payment would be made by the government agency itself. (*Id.* at p. 19.)

---

[1]  All section references are to the Revenue and Taxation Code unless otherwise indicated.

[2]  Our 1965 opinion dealt with Government Code section 51030, the predecessor statute to section 7280.

We are now presented with that question: is there a different result when the official enters into the rental agreement and submits payment for the room with a state issued (or other governmental) check? We conclude that the result would be the same irrespective of the source of the payment.

The issue to be resolved here, as in our 1965 opinion, concerns the scope and effect of the federal and state constitutional immunity from local taxation recognized over the years by the courts. In our 1965 opinion, we reviewed at length the case law applicable to the constitutional immunity of the United States and the state from local taxation, starting with *McCulloch* v. *Maryland* 17 U.S. (4 Wheat.) 315 (1819). We summarized the case law as follows:

> "It is evident from [the] cases . . . that the United States Supreme Court does not intend to invalidate state taxes merely because the economic burden thereof falls on the federal government. Thus it appears that the decisions of the United States Supreme Court have depended upon whether the legal incidence of the tax fell upon the United States and not on whether the economic burden of the tax was borne by the United States. Only in those instances where the legal incidence of the tax has fallen directly upon the government has the immunity been recognized. . . ." (46 Ops.Cal.Atty.Gen. 16, 19.)

As for state officials subject to local transient occupancy taxes, we said:

> "While the state itself is ordinarily regarded as exempt from taxes imposed by counties unless the Legislature has expressly provided therefor [citations], and the United States, its agencies, and instrumentalities are immune from state taxation [citations], such exemptions do not extend to the officers and employees thereof unless the legal incidence of the tax falls directly upon the government. In this sense, there is no difference in imposing a tax on an official or employee of the United States government and imposing a tax on an official or employee of the State of California." (*Id.* at pp. 17-18.)

In our 1965 opinion, we found the transient occupancy tax to be an "excise tax" levied upon the occupant--in this case the governmental employee. The tax is thus levied only indirectly upon the employer even where the employer ultimately shoulders the economic burden. All other things being equal, does the fact that the employer-governmental agency furnishes the employee with a government check to pay the room charges mandate a different outcome?

In *United States* v. *County of Fresno* (1977) 429 U.S. 452 [97 S.Ct. 699, 50 L.Ed.2d 683], the United States Supreme Court held that the State of California could collect a property tax from United States Forest Service employees for their possessory interests in houses located on federal property in national forests and furnished to them as part of their compensation. The court concluded:

> ". . . The `legal incidence' of the tax involved in this case falls neither on the Federal Government nor on federal property. The tax is imposed solely on private citizens who work for the Federal Government. The tax threatens to interfere with federal laws relating to the functions of the Forest Service only insofar as it may impose an economic burden on the Forest Service--causing it to reimburse its employees for the taxes legally owed by them. . . ." (*Id.* at p. 464.)

In *United States* v. *New Mexico* (1982) 455 U.S. 720 [102 S.Ct. 1373, 71 L.Ed.2d 580], the court ruled that independent contractors paying for purchases with drafts drawn on the

United States Treasury would be subject to state gross receipts and use taxes even though the purchases were to be used in the construction and repair of federal atomic laboratories. Regarding the use of government checks for payment, the court stated:

> " . . . [T]he Government earnestly argues that its contractors are entitled to tax immunity because, among other things, they draw checks directly on federal funds, instead of waiting a time for reimbursement. . . . We cannot believe that an immunity of constitutional stature rests on such technical considerations, for that approach allows `any government functionary to draw the constitutional line by changing a few words in a contract.' [Citation.]" (*Id.* at p. 737.)

In a similar vein, the Ohio Supreme Court ruled in *Akron Home Medical Services, Inc.* v. *Lindley* (Ohio 1986) 495 N.E.2d 417, 421, that "the mere voluntary payment by the federal government of an obligation incurred by a Medicare recipient hardly rises to the level of a direct tax."

Accordingly, we reject the argument that the election by a governmental agency to advance the room rental charges incurred by its employees while on official business transmutes a local transient occupancy tax into a direct tax on the government. In our view, the tax remains on the employee for "the privilege of occupying a room." (§ 7280, subd. (a); see 65 Ops.Cal.Atty.Gen. 267, 269 (1982).) It is the employee who is the contracting party and obligated to make payment. Under such circumstances, it cannot be said that the "legal incidence" falls upon the governmental agency at the time the check is tendered. (See *Comptroller* v. *World Inns* (Md. 1987) 528 A.2d 477 [federal employees contracting for the rental of rooms are subject to state sales tax]; *Keystone Auto Leasing, Inc.* v. *Norberg* (R.I. 1985) 486 A.2d 613, 615 ["As long as a state makes no claim of right to collection from the federal government or its instrumentalities, a state may impose a tax"].)[3]

In answer to the question presented, therefore, we conclude that a city may levy a transient occupancy tax upon a state employee who, while on state business, contracts for a hotel room and submits payment for the room with a state issued check.

* * * * *

---

[3]Of course, a local ordinance may exempt public officials from the imposition of the transient occupancy tax while traveling on official business.