**UNITED STATES of America, Plaintiff-Appellee,**

v.

**STATE OF WASHINGTON; Department of Revenue of the State of Washington; and Charles W. Hodde, Director of Revenue, and his successors in office, Defendants-Appellants.**

**No. 78–1424.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1980.

Decided Aug. 24, 1981.

Leland T. Johnson, Washington, D. C., for defendants-appellants; Slade Gorton, Atty. Gen. and Richard H. Holmquist, Senior Asst. Atty. Gen., Olympia, Wash., on brief.

John J. McCarthy, Jr., Tax Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee; Carr Ferguson, Asst. Atty. Gen., Tax Division, U. S. Dept. of Justice, Washington, D. C., on brief.

Before ANDERSON and SKOPIL, Circuit Judges, and BYRNE,* District Judge.

WM. MATTHEW BYRNE, Jr., District Judge:

This appeal is from an order of the district court, which declared unconstitutional three 1975 sales and use tax statutes of the State of Washington (the "State") insofar as those statutes imposed such taxes on prime contractors for construction activity performed on federally-owned land. The district court's order also permanently enjoined the State from assessing or collecting the challenged taxes and directed the State to refund such taxes as had been theretofore collected.

The primary issue presented in this appeal is whether the challenged tax statutes unconstitutionally discriminate against those with whom the United States deals, in violation of the Supremacy Clause of the United States Constitution.[1] This issue requires application of the principles enunciated in the long line of cases from *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), through, most recently, *United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977).

---

* The Honorable Wm. Matthew Byrne, Jr., United States District Judge for the Central District of California, sitting by designation.

1. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; . . . ." U.S.Const., art. VI, cl. 2.

## I. *THE CHALLENGED TAXES*

Pursuant to Chapters 82.04, 82.08 and 82.14 of the Revised Code of Washington, the State assesses and collects a "sales" tax on every retail sale of tangible personal property within the State. Pursuant to Chapters 82.12 and 82.14 thereof, a "use" tax is similarly assessed and collected on certain specified consumer uses of such property within the State.[2] These taxes are imposed on the "consumer" or "buyer" of the property, terms that are quite broadly defined by Wash.Rev.Code §§ 82.04.190 and 82.08.010. Prior to July 1, 1975, the statutes in question defined the terms "retail sale," "consumer," and "buyer" in such a way that no sales or use tax was imposed on any prime contractor or subcontractor with respect to the purchase or use of personal property, if such property was to be incorporated into a construction project.[3] As a result of the definitions of these terms, the contract between the prime contractor and the owner of the realty became the only taxable "retail sale" of the construction project or of any personal property incorporated therein. The owner of the realty[4] was thus statutorily defined as the only "consumer" or "buyer" and was, therefore, the only one directly liable for the sales or use taxes imposed. These taxes were collected from the owner of the realty by the prime contractor for eventual payment to the State.

Under the tax scheme described above, no sales or use tax was imposed with regard to construction projects or material incorporated into construction projects on real property owned by the United States or an instrumentality thereof. The State has conceded that any tax levied directly upon the federal government's own acquisition or use of personal property within the State would have violated the Supremacy Clause, which grants to the United States and its instrumentalities complete immunity from state taxes, unless the federal government consents to such taxes.[5]

Effective July 1, 1975, the State amended the above statutes, so that, with respect to construction on *federally*-owned land, the prime contractor came to be treated as the "consumer" or "buyer," and thus became

2. The general State retail sales tax has fluctuated between 4.5 and 4.6 percent of the "selling price." Wash.Rev.Code § 82.08.020. The general State use tax has similarly fluctuated between 4.5 and 4.6 percent of the "value of the article used." Wash.Rev.Code § 82.12.020.

The challenged tax statutes also authorize local counties and municipalities to assess and collect comparable sales and use taxes. Local sales and use taxes have ranged from zero to 0.8 percent of the selling price (in the case of a sales tax) or value of the article used (in the case of a use tax), depending upon the local governments with jurisdiction, with a statutory maximum of 0.925 percent. Wash.Rev.Code §§ 82.14.030 and 82.14.045.

3. For example, Wash.Rev.Code § 82.04.190(1)(b) at the time defined "Consumer," in part, to include:

(1) Any person who purchases, acquires, owns, holds, or uses any article of tangible personal property irrespective of the nature of his business and including, among others, without limiting the scope hereof, persons who install, repair, clean, alter, improve, construct, or decorate real or personal property of or for consumers *other than* for the purpose ... (b) of incorporating such property as an ingredient or component of real or personal property when installing, repairing, cleaning, altering, imprinting, improving, constructing or decorating such real or personal property of or for consumers .... [emphasis added].

4. Throughout this opinion, as a matter of convenience, we shall refer to the entity with whom the prime contractor contracts as the "owner" of the realty. It is important to recognize, however, that the taxes are not limited to only such consumers. Under Wash.Rev.Code § 82.04.190(4), a consumer, upon whom the taxes are imposed, includes any person "who is an owner, lessee or has the right of possession to or an easement in real property which is being constructed, repaired, decorated, improved or otherwise altered by a person engaged in a business ...."

5. *See Diamond Nat'l Corp. v. State Bd. of Equalization*, 425 U.S. 268, 96 S.Ct. 1530, 47 L.Ed.2d 780 (1976); *United States v. Mississippi Tax Comm'n*, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975); *First Agricultural Nat'l Bank v. State Tax Comm'n*, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968); *Kern-Limerick, Inc. v. Scurlock*, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1954); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

directly liable for the State's sales and use taxes on materials it acquired or was furnished for incorporation into such federal projects.[6] However, prime contractors on non-federal projects, other than local housing authority projects,[7] continued not to be treated as "consumers" and paid no tax on their purchase or use of materials incorporated into such projects.

## II. *PROCEDURAL BACKGROUND*

The United States filed its original complaint on February 16, 1976 against the State, the Department of Revenue of the State, and Mary Ellen McCaffree, Director of Revenue of the State, and her successors in interest (the "Defendants"). The complaint sought: (1) a declaratory judgment that the Washington Sales and Use Tax Act, Chapters 82.08, 82.12 and 82.14, Revised Code of Washington, as amended, as applied to construction activity involving the United States within the State, was unconstitutional under the Supremacy Clause; (2) a permanent injunction against the State imposing, assessing or collecting such taxes; and (3) an order directing the refund of such taxes as had been collected, with appropriate interest.[8] After all Defendants answered, the parties filed cross-motions for summary judgment as to all issues except the precise amount of refund that might be due.[9] Defendants appeal from the district court's order, which amended and supplemented its original or-

**6.** The manner in which this was accomplished is somewhat complex. The change was effected by substitute House Bill No. 86, enacted into law as Chapter 90, Laws of 1975 (amending Wash.Rev.Code §§ 82.04.050 and 82.04.190); Section 5 of Substitute House Bill No. 2736, enacted into law as Section 5 of Chapter 291, Laws of 1975 (amending Wash.Rev.Code § 82.-04.050) and House Bill No. 1229, enacted into law as Chapter 1, Laws of 1975–76 (amending Wash.Rev.Code §§ 82.12.010 and 82.12.020). These statutes added the following definition of "consumer" to Wash.Rev.Code § 82.04.190:

"Consumer" means the following: . . .
(6) Any person engaged in the business of constructing, repairing, decorating, or improving new or existing buildings or other structures under, upon or above real property of or for the United States, any instrumentality thereof, or a county or city housing authority created pursuant to chapter 35.82 RCW, including the installing or attaching of any article of tangible personal property therein or thereto, whether or not such personal property becomes a part of the realty by virtue of installation. Any such person shall be a consumer within the meaning of this subsection in respect to tangible personal property incorporated into, installed in, or attached to such building or other structure by such person.

These statutes further expressly excluded from the definition of "consumer" "the United States, instrumentalities thereof, and county and city housing authorities created pursuant to chapter 35.82 RCW in respect to labor and services rendered to their real property." Wash.Rev.Code § 82.04.190(4). Wash.Rev. Code § 82.04.050 was also amended so as to redefine "retail sale" and "sale at retail" to *exclude* expressly from their scope contracts calling for the improvement, repair or construction of real property owned by the United

States or any of its instrumentalities and to *include* sales of materials to prime contractors engaged in construction work on federally-owned property. As with the sales tax, the liability of federal prime construction contractors for the State's use tax arose basically from the inclusion of such contractors within the meaning of the term "consumer," and the use of that term in Wash.Rev.Code § 82.12.020, under which the use tax is levied.

**7.** The constitutionality of imposing these taxes on private contractors dealing with local housing authorities is not presented in this appeal. It is, however, discussed, although not reached (because of the jurisdictional bar of the Johnson Act, 28 U.S.C. § 1341), in the related case of *Housing Authority v. State of Washington*, 629 F.2d 1307 (9th Cir. 1980).

**8.** The United States is seeking a refund only of those sales and use taxes that have been paid to the State by prime contractors on federal projects and with respect to which those contractors have claimed and received from the United States reimbursement separate and apart from the general contract price.

**9.** Because the case had been filed prior to the August 12, 1976 repeal of 28 U.S.C. § 2281 and sought a declaration of the unconstitutionality of a state statute, application was made for a three-judge federal district court to hear the motions. Before the application was acted upon, however, and to avoid the necessity of convening a three-judge district court, the original action was dismissed by stipulation and order of the court and was subsequently refiled, along with all the pleadings then on file, which were all deemed refiled as of May 12, 1977.

der on the cross-motions for summary judgment.

### III. *DISCUSSION*

The United States contends, and the district court ruled, that the imposition of the State sales and use taxes upon prime contractors' acquisition and use of tangible personal property for ultimate incorporation into federal construction projects unconstitutionally discriminates against such contractors because prime contractors on non-federal projects are not similarly taxed.

The State concedes the principle that "a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals." *United States v. City of Detroit*, 355 U.S. 466, 473, 78 S.Ct. 474, 478, 2 L.Ed.2d 424, 429 (1958). *See also Phillips Chemical Co. v. Dumas Independent School District*, 361 U.S. 576, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960). The State argues, however, that the Supreme Court has recognized that mere disparate treatment of those dealing with the United States is not enough to render a state tax law unconstitutional. The State contends that the district court erred in concluding that there exists in this case the sort of discriminatory taxation against which the Supremacy Clause protects the federal government and those with whom it deals.

The State relies chiefly on *United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977), and *United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958). At issue in *Fresno* was a "possessory interest" tax that the State of California imposed upon renters of housing on tax-exempt real property and not upon renters of housing on taxable real property. The United States Forest Service had furnished housing on federal property to certain of its employees as partial compensation for the services they rendered to the Forest Service. California determined that the employees "rented" the housing they were furnished. Because the housing was on tax-exempt property, California assessed the employees an annual possessory interest tax on the value of their interest in the housing.

The Court held the California tax constitutionally valid. The Court reviewed its line of cases since *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), and explained that, in *McCulloch*, the Court had rejected Maryland's argument that the State's power to tax the Bank of the United States only involved the impermissible power to destroy the Bank when the State's taxing power was abused, and that the states should be trusted not to abuse their power to tax a federal function just as a state must be trusted not to abuse its power to tax its own citizens. That argument was rejected, according to the *Fresno* court,

> because the political check against abuse of the power to tax a State's constituents is absent when the State taxes only a federal function. A State's constituents can be relied on to vote out of office any legislature that imposes an abusively high tax on them. They cannot be relied upon to be similarly motivated when the tax is instead solely on a federal function. [footnote omitted].

*Fresno*, 429 U.S. at 458–59, 97 S.Ct. at 703, 50 L.Ed.2d at 689–90.

Reviewing the cases since *McCulloch*, the *Fresno* Court concluded that,

> [s]o long as the tax is not directly laid on the Federal Government, it is valid if nondiscriminatory . . . . The rule to be derived from the Court's more recent decisions . . . is that the economic burden on a federal function of a state tax imposed on those who deal with the Federal Government does not render the tax unconstitutional so long as the tax is imposed equally on the other similarly situated constituents of the State. [citations omitted].

429 U.S. at 460–62, 97 S.Ct. at 704–05, 50 L.Ed.2d at 691–92.

Thus, the Court held that the tax imposed on renters of tax-exempt real property was nondiscriminatory and therefore constitutional, because,

the State of California imposed a property tax on owners of non-exempt property which is "passed on by them to their . . . lessees." Consequently, the appellants who rent from the Forest Service are no worse off . . . than those who work for private employers and rent houses in the private sector.

429 U.S. at 465, 97 S.Ct. at 706, 50 L.Ed.2d at 694.

Similarly, in *Detroit,* the Supreme Court upheld a Michigan law that imposed on users of tax-exempt property a use tax comparable to the property tax imposed on owners of taxable property. The Court stated that

here the tax applies to every private party who uses exempt property in Michigan in connection with a business conducted for private gain. Under Michigan law this means persons who use property owned by the Federal Government, the State, its political subdivisions, churches, charitable organizations and a great host of other entities. . . . [T]he legislature apparently was trying to equate the tax burden imposed on private enterprise using exempt property with that carried by similar businesses using taxed property. Those using exempt property are required to pay no greater tax than that placed on private owners or passed on by them to their business lessees. [footnote omitted].

355 U.S. at 473–74, 78 S.Ct. at 478, 2 L.Ed.2d at 429.

The State argues that the factual patterns in *Fresno* and *Detroit* are analogous to that presented in this case. The State urges that both the "renters" of tax-exempt property in *Fresno,* who constitutionally could be required to pay a tax otherwise imposed upon owners of non-exempt real property, and the users of tax-exempt property in *Detroit,* who constitutionally could be required to pay a tax otherwise imposed upon owners of non-exempt property, are in positions parallel to the contractors of projects on tax-exempt federal realty who, under the challenged statutes, are required to pay taxes otherwise imposed upon owners of non-federal non-exempt realty on which construction work is done.

The State makes three intertwined arguments in constructing this supposed parallel. First, it argues that its taxation scheme, when viewed as a whole, is constitutional because it taxes comparably those who are similarly situated, by imposing the same level of taxation on all "consumers" in the State. In a closely-related argument, the State urges that the political check that the Supreme Court described in *Fresno* as necessary and sufficient to make disparate tax treatment of those dealing with the federal government constitutional is provided through the State's imposition of the same sales and use taxes on a broad base of the State's residents. The State contends that the United States need not fear that its functions will be burdened by abusive taxation of those with whom it deals because a sufficient political check is provided in the State's equal taxation of all its "consumers." Finally, the State argues that, by taxing prime contractors on federal projects at the same rate as owners of realty on which non-federal projects are constructed,[10] it has done no more than properly equalize the financial burden imposed upon all those who contract with construction contractors. In the absence of the challenged statutes, the State submits both that it would lose a significant amount of revenue that otherwise would be due it if the construction work were done on non-federal land and that the United States would obtain an unfair advantage, relative to other owners of realty on which construction work is done in the State.

Each of the State's arguments significantly misconstrues the Supreme Court's reasoning and language. First, in defining

10. Although the rates are the same, the tax that the contractors are required to pay may be less than the tax paid by owners of non-federal realty on which construction work is done because the contractors are taxed only on the materials incorporated into the project, whereas the owners pay a tax that includes the cost of labor and services performed by the contractor.

which groups were "similarly situated" for purposes of determining whether treatment of those dealing with the federal government was discriminatory, the *Fresno* Court compared the Forest Service employee "renters" to renters of real property that was not tax-exempt. Although Justice Stevens disagreed, the Court, per Justice White, held that because property owners of taxable real property would pass along the property tax imposed upon them to their renters, all *renters* (both those who "rented" from the federal government and those who did not) were being placed in a similar position. In *Detroit*, the Court likewise reasoned that the tax involved was nondiscriminatory because those using tax-exempt property paid the same tax as was passed on by owners of taxed property to their business lessees. The similarly situated group examined was again not all taxpayers, but all *users* of property. In the instant case, therefore, the relevant "similarly situated" group is not all "consumers," as the State suggests, but rather all prime contractors. The State's statutory inclusion of prime contractors of federal projects within its definition of "consumers" does not automatically free the tax from constitutional doubt. What must be examined is whether prime contractors on federal projects are disadvantaged in comparison to prime contractors on non-federal projects.

■ Although mere *differential* treatment of those contractors dealing with the federal government does not in itself render the tax invalid,[11] the taxation scheme here operates to burden only those prime contractors who work on federal rather than State or private projects. The taxes cannot be justified under the authority of *Fresno* as being an equalization of the tax burden imposed on non-federal contractors, because non-federal contractors are not taxed directly upon their acquisition of materials for incorporation into the projects upon which they work. Nor is there anything in the record from which to conclude that the economic incidence of the sales and use taxes would necessarily be shifted from the owners of non-federal land to their prime contractors.[12] Therefore, it has not been demonstrated that the tax burdens on all contractors are, in fact, equalized.[13]

■ Because no contractors except those dealing with the United States are taxed, or necessarily have another's tax burden economically shifted to them, as occurred in *Fresno* and *Detroit*, federal contractors are financially disadvantaged in a way that has the constitutionally impermissible potential of interfering with the functions of the federal government. The

11. For example, if prime contractors dealing with private enterprises were directly taxed, but prime contractors dealing with the federal government were exempted from such taxes, no constitutional infirmity would be created. It is not differential treatment that is prohibited but, rather, treatment that acts to favor those not dealing with the United States over those dealing with it.

12. In both *Fresno* and *Detroit* the Supreme Court concluded that the economic incidence of the subject taxes would be passed through to those who dealt with the directly taxed sectors. *See* pp. 574–575 *supra*. In the instant case, there are no findings, economic data, or demonstrated market assumptions in the record from which to conclude that: 1) the owners of non-federal property have sufficient market power vis-a-vis prime contractors to pass on the economic incidence of the subject tax; 2) even if such market power exists generally, why all owners of non-federal property would necessarily have sufficient market power to allow each of them to pass on all of the economic

incidence to prime contractors; and 3) even if both of these conclusions are now true, that they will remain so, notwithstanding any changes in economic conditions. *Cf. Fresno*, 429 U.S. at 470, 97 S.Ct. at 708, 50 L.Ed.2d at 697 (Stevens, J., dissenting) ("The private owner's tax obligation is one of the factors that determines the fair rental value . . . but it is not correct to say that the owner's tax is paid by the tenant."); *United States v. California State Bd. of Equalization*, 650 F.2d 1127 at 1132 (9th Cir. 1981) (district court finding that state use tax discriminated against United States and its contractors was vacated as being "totally unsupported by anything in the record").

13. The Court notes that those contractors not dealing with the United States cannot have their assets levied upon or seized for satisfaction of the tax liability, and need not pay over the tax that they have collected from the owner of the realty until the project is completed and they have been paid in full.

State's preferential treatment of prime contractors on non-federal projects could discourage contractors from performing work for the United States or could lead to their doing so only at higher levels of compensation than demanded for comparable non-federal work. We need not determine whether the taxes, by being imposed directly upon a contractor only when the contractor deals with the United States, actually have the effect of interfering with federal functions. As the Supreme Court said in *Fresno* of the decision in *McCulloch v. Maryland*:

> If the State's power to tax ... were recognized in principle, ... [it is doubtful whether the federal courts would have the ability] to review each exercise of such power to determine whether the tax would or would not destroy a federal function.

*Fresno*, 429 U.S. at 458, 97 S.Ct. at 702, 50 L.Ed.2d at 689. If a tax treats those dealing with the United States in a more disadvantageous fashion than those not dealing with it, as do these taxes, the potential for interfering with the functioning of the federal government has been unconstitutionally created.

As to the State's second related argument, the political check that was described in *Fresno* simply is not present in this case. In *Fresno*, there was a similarly situated group that was analogously taxed, namely, the lessees of non-exempt property. That group provided the necessary political safeguard. Here there is no broad state constituency taxed as are the prime contractors who deal with the federal government. Only when those similarly situated not dealing with the federal government feel the same tax burden as those dealing with it, can the State's constituency be relied upon to ensure that the taxation does not rise to abusive levels. Thus, only if all prime contractors were forced either directly or indirectly to pay the challenged taxes would the political check described in *Fresno* be present. In that situation alone would it be clear that those with interests comparable to federal contractors could be relied upon to ensure that the tax on federal contractors would not rise to abusive levels.[14]

■ The State's final argument, that it has properly equalized the burden imposed on all who contract with construction contractors, is equally misdirected. Although it is true that the State's scheme might have the effect of forcing the federal government to reimburse its contractors for the amount of the taxes that they must pay to the State, burdening the federal government in a fashion equivalent to other purchasers of construction work in the State does not make the tax constitutional. The challenged statutes cannot be made valid by equalizing the tax burden of the United States with that of non-federal owners of real property on which construction work is done because a tax either directly imposed on the federal government or indirectly passed on to it be contractors would be constitutionally impermissible as a tax on the United States without its consent. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). In the absence of the challenged statutes, the United States indeed may be less financially burdened

14. In this regard, the Court agrees with and takes some guidance from the dissent of Justice White, the author of the majority opinion in *Fresno*, in the recent case of *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Although the majority decided that case on grounds of collateral estoppel and did not reach the Supremacy Clause issue, Justice White wrote that he believed that imposition of Montana's one percent gross receipts tax upon contractors of public, but not private, construction projects was unconstitutional. It was not enough, he stated, that the tax was imposed on contractors of state as well as federal projects. 440 U.S. at 172, 99 S.Ct. at 983, 59 L.Ed.2d at 229. Rather, he explained, in order to be "imposed equally" upon "similarly situated constituents of the State," the same tax would have to be imposed upon contractors of private construction projects. 440 U.S. at 170–72, 99 S.Ct. at 982–83, 59 L.Ed.2d at 227–28. Only then, he stated, would there be an "efficacious 'political check' on potentially abusive taxation." 440 U.S. at 170, 99 S.Ct. at 982, 59 L.Ed.2d at 228. Similarly, in this case, the only political check that would be constitutionally adequate would be similar taxation of all construction contractors in the State.

than others who contract with construction contractors, but this advantage constitutionally may *neither* be eliminated by directly taxing the federal government *nor* by taxing those who contract with the federal government while not taxing those "similarly situated" who contract with others.

### IV. *CONCLUSION*

■ A tax may be imposed upon those who deal with the federal government only if the burden of the tax is equally felt by those "similarly situated" who do not deal with the federal government. The State's statutory scheme places a tax burden on construction contractors dealing with the United States, one which is not placed upon contractors who perform similar work for non-federal owners of real property. The challenged taxes discriminate against those with whom the federal government deals, and have the potential for interfering with the functions of the federal government. They are, therefore, unconstitutional under the Supremacy Clause of the United States Constitution.[15]

Accordingly, the court's order below is AFFIRMED.

---

15. Because we affirm on the basis of the statutes' unconstitutional discrimination against those with whom the United States deals, we need not reach the issues presented by the alternative ground of possible unconstitutionality, which was urged by the United States below but rejected by the district court, that the legal incidence of the taxes unconstitutionally falls upon the United States. *Cf. United States v. California State Bd. of Equalization*, 650 F.2d 1127 at 1131 (9th Cir. 1981) (where there is a "strong economic incentive" that "all but compels" the lessor to collect a sales tax from the lessee, coupled with a legislative intent that lessee pay the tax, the legal incidence thereof is unconstitutionally placed on lessee-United States).