United States Court of Appeals,

Eleventh Circuit.

No. 94-6400.

JEFFERSON COUNTY, A political subdivision of the State of
Alabama, Plaintiff-Appellant,

v.

William M. ACKER, Jr., Defendant-Appellee.

JEFFERSON COUNTY, A political subdivision of the State of
Alabama, Plaintiff-Appellant,

v.

U.W. CLEMON, Defendant-Appellee,

The Federal Judges Association, Amicus.

Aug. 21, 1995.

Appeal from the United States District Court for the Northern
District of Alabama. (Nos. CV93-M-69-S and CV93-M-196-S), Charles
A. Moye, Jr., Judge.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HENDERSON,
Senior Circuit Judge.

BIRCH, Circuit Judge:

In this case, we decide whether a tax, imposed by a county
government for the privilege of engaging in any occupation within
that county and measured by the taxpayer's gross receipts, can be
levied against an Article III judge. [1]  The district court held
that, as applied to federal judges, such a tax violates the
intergovernmental tax immunity doctrine and the Compensation Clause
of Article III.  We REVERSE and REMAND.

---

[1]Article III of the United States Constitution vests
judicial power in the Supreme Court "and in such inferior Courts
as the Congress may from time to time ordain and establish."
U.S. Const. art. III, § 1.  Article III judges include federal
district court judges, judges for the circuit courts of appeals,
and justices of the Supreme Court.

## I. BACKGROUND

As authorized by the Alabama state legislature, plaintiff-appellant Jefferson County, Alabama, enacted a tax applicable to all workers who were not already subject to paying license fees at either the county or the state level. Variously styled as an occupational, license or privilege tax, Ordinance 1120 provides:

> It shall be unlawful for any person to engage in or follow any vocation, occupation, calling or profession ... within [Jefferson] County on and after the 1st day of January, 1988, without paying license fees to the County for the privilege of engaging in or following such vocation, occupation, calling or profession, which license fees shall be measured by one-half percent (1/2%) of the gross receipts of each such person.

Jefferson County, Ala., Ordinance 1120, § 2 (Sept. 29, 1987) [hereinafter Ordinance 1120].[2] Where a person subject to the tax

---

[2]The ordinance provides the following definitions:

> (A) The word "person" shall mean any natural person. Whenever the word "person" is used in any clause prescribing and imposing a penalty in the nature of a fine or imprisonment, the wor[d] as applied to a partnership or other form of unincorporated enterprise shall mean the partners or members thereof, and as applied to corporations shall mean the officers and directors thereof.

> (B) The words "vocation, occupation, calling and profession" shall mean and include the doing of any kind of work, the rendering of any kind of personal services, or the holding of any kind of position or job within Jefferson County, Alabama, by any clerk, laborer, tradesman, manager, official or other employee, including any non-resident of Jefferson County who is employed by any employer ... where the relationship between the individual performing the services and the person for whom such services are rendered is, as to those services, the legal relationship of employer and employee, including also a partner of a firm or an officer of a firm or corporation, if such partner or officer receives a salary for his personal services rendered in the business of such firm or corporation, but they shall

works both inside and outside Jefferson County, the ordinance requires the person to compute his or her tax based on the percentage of work performed within the county. *Id.* § 3. The ordinance directs employers to withhold the license fees, to file returns on behalf of their employees, and to maintain records thereof for five years. *Id.* § 4. Where an employer has failed to comply with the occupational tax provisions, employees remain responsible for paying the tax and for filing their own returns. *Id.* Failure to withhold or to pay the occupational tax may result in the assessment of interest and penalties, plus "punishment within the limits of and as provided by law for each offense." *Id.*

---

not mean or include domestic servants employed in private homes and shall not include businesses, professions or occupations for which license fees are required to be paid under any General License Code of the County or to the State of Alabama or the County....

(C) The words "vocation, occupation, calling and profession" shall also mean and include the holding of any kind of office or position either by election or appointment, by any federal, state, county or city officer or employee where the services of such official or employee are rendered within Jefferson County, Alabama.

....

(F) The words "gross receipts" and "compensation" shall have the same meaning, and both words shall mean and include the total gross amount of all salaries, wages, commissions, bonuses or other money payment of any kind, or any other considerations having monetary value, which a person receives from or is entitled to receive from or be given credit for by his employer for any work done or personal services rendered in any vocation, occupation, calling or profession....

Ordinance 1120, § 1.

§ 10.[3]

Defendants-appellees, the Honorable William M. Acker, Jr. and the Honorable U.W. Clemon, are federal district judges in the Northern District of Alabama, which encompasses Jefferson County. Both Judge Acker and Judge Clemon have their principal offices in Jefferson County. With the exception of Judge Acker and Judge Clemon, all active judges in the Northern District of Alabama have paid their occupational taxes based on differing percentages of their salaries[4]; additionally, all state district and circuit court judges in the Tenth Judicial Circuit of Alabama and the three Alabama Supreme Court Justices with satellite offices in Jefferson County have paid their occupational taxes based on portions of their salaries. During their tenures as federal judges, both Judge Acker and Judge Clemon have paid their state income taxes. Notwithstanding the frequently articulated boast that they reside in "God's country", the judges have steadfastly refused to "tithe".

When Judge Acker and Judge Clemon each failed to pay their occupational taxes pursuant to Ordinance 1120, Jefferson County brought suit in state court to recover the delinquent taxes; Judge Acker and Judge Clemon removed the case to federal court. On

---

[3]Ordinance 1120 prescribes no punishment other than interest and penalty payments, but the ordinance grants the county's Director of Revenue authority to adopt and to enforce binding regulations pertaining to the enforcement of the license tax. *Id.* § 8.

[4]At least one Article III judge, who is not a party to this suit, has paid the occupational tax under protest. The late Honorable Robert S. Vance, United States Circuit Judge, who had his principal office in Jefferson County, did not pay the occupational tax from its effective date in January, 1988, until his death in December, 1989.

cross-motions for summary judgment,[5] the district court held that the license tax was "imposed directly upon a governmental function—the performance in the federal courthouse in Birmingham, Alabama of federal judicial functions.  Those functions are the actual event taxed (the legal incidence of the tax)." *Jefferson County v. Acker,* 850 F.Supp. 1536, 1543 (N.D.Ala.1994). Accordingly, the court ruled that the occupational tax, as applied to Article III judges, was a direct tax on the federal judiciary in violation of the intergovernmental tax immunity doctrine. Moreover, because the occupational tax "becomes effective even before the income is earned, and before it is paid, and before it is received," *id.* at 1546 n. 14, the court also held that the occupational tax diminished rather than taxed the judges' salaries, in violation of the Compensation Clause of Article III.[6]  The court

---

[5]The parties agreed that there were no material facts to be decided by trial;  consequently they stipulated to the facts of the case and submitted the following issues of law for decision on summary judgment:

> (1) Does ... Ordinance 1120 discriminate against defendants by reason of the federal source of their pay or compensation contrary to 4 U.S.C. §§ 105-111?

> (2) If not, does ... Ordinance 1120 contravene the Constitution of the United States as applied to the defendant Article III judges?

*Jefferson County v. Acker,* 850 F.Supp. 1536, 1537 (N.D.Ala.1994).  Because the district court held for the county on issue one, the county did not appeal that portion of the decision, and we do not address it.

[6]Article III, Section 1 of the United States Constitution provides in pertinent part that "[t]he Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."  U.S. Const. art. III, § 1.

granted summary judgment on behalf of Judge Acker and Judge Clemon. The county appealed.

## II. DISCUSSION

The parties have not cited, and we have not found, any Supreme Court or Court of Appeals precedents addressing whether an occupational tax levied against Article III judges violates either the intergovernmental tax immunity doctrine or the Compensation Clause.[7] Consequently, we apply the Supreme Court's general jurisprudence regarding the intergovernmental tax immunity doctrine and the Compensation Clause to the tax in question. We review *de novo* the district court's grant of summary judgment. *Jaques v. Kendrick,* 43 F.3d 628, 630 (11th Cir.1995).

### A. *Intergovernmental Tax Immunity Doctrine*

Rooted in the Supremacy Clause,[8] the intergovernmental tax immunity doctrine is a core tenet of federalism that prevents either the federal government or the state governments from directly taxing the activities of the other. *See generally United*

---

[7]In *James v. Dravo Contracting Co.,* 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937), the Court did find that a license tax levied against a government contractor did not violate the intergovernmental tax immunity doctrine. *Id.* at 138, 161, 58 S.Ct. 211, 221. In that opinion, however, the Court explicitly noted that the tax had been levied upon an independent contractor, rather than an officer of the federal government. *Id.* at 149, 58 S.Ct. at 216. Thus, while *James* rejected "[t]he theory, which once won a qualified approval, that a tax on income is legally or economically a tax on its source," *Graves v. New York ex rel. O'Keefe,* 306 U.S. 466, 480, 59 S.Ct. 595, 598, 83 L.Ed. 927 (1939), the Court did not confront the specific question of whether an occupation tax levied on a federal officer is a direct tax on the United States government.

[8]"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land...." U.S. Const. art. VI, cl. 2.

*States v. New Mexico,* 455 U.S. 720, 730-33, 102 S.Ct. 1373, 1380-82, 71 L.Ed.2d 580 (1982) (describing the history of this " "much litigated and often confused field' " (quoting *United States v. City of Detroit,* 355 U.S. 466, 473, 78 S.Ct. 474, 478, 2 L.Ed.2d 424 (1958))). At the pinnacle of its application, the doctrine was interpreted to exempt federal employees from any state taxation. After its decision in *James v. Dravo Contracting Co.,* 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937), however, the Supreme Court has upheld state taxation of federal employees except in instances of discriminatory taxes directed against federal employees or direct taxation of the federal government by the states:

> "[U]nder current intergovernmental tax immunity doctrine *the States can never tax the United States directly but can tax any private parties with whom it does business,* even though the financial burden falls on the United States, *as long as the tax does not discriminate against the United States or those with whom it deals.*" Absolute tax immunity is appropriate only when the tax is on the United States itself "or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned."

*California State Bd. of Equalization v. Sierra Summit, Inc.,* 490 U.S. 844, 848-49, 109 S.Ct. 2228, 2232, 104 L.Ed.2d 910 (1989) (alteration in original) (citation omitted) (emphasis added) (quoting *South Carolina v. Baker,* 485 U.S. 505, 523, 108 S.Ct. 1355, 1366, 99 L.Ed.2d 592 (1988) and *New Mexico,* 455 U.S. at 735, 102 S.Ct. at 1383); *see also United States v. California,* --- U.S. ----, ----, 113 S.Ct. 1784, 1788-89, 123 L.Ed.2d 528 (1993); *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 811, 109 S.Ct. 1500, 1505, 103 L.Ed.2d 891 (1989). Thus, under the intergovernmental tax immunity doctrine, we must strike down Ordinance 1120 if it

discriminates against federal employees[9] or if it taxes the federal government directly.

1. Discrimination Against Federal Employees

A state tax does not discriminate unconstitutionally against federal employees if the tax is imposed equally upon similarly situated constituents of the state, *see United States v. County of Fresno,* 429 U.S. 452, 462, 97 S.Ct. 699, 704-05, 50 L.Ed.2d 683 (1977), particularly those constituents who are in privity with the state imposing the tax, *see Davis,* 489 U.S. at 815 n. 4, 109 S.Ct. at 1507 n. 4. The Jefferson County tax expressly includes within its scope elected and appointed officials at the municipal, county, and state levels. *See* Ordinance 1120, § 1(C).[10] Jefferson County has applied the occupational tax to state district and circuit court judges and to Alabama Supreme Court Justices serving in the county, and all of these state judges and justices have complied with the ordinance.

Significantly, the occupational tax does not discriminate against judges vis-a-vis other professions. The ordinance imposes a general tax, exempting only those workers who already are subject to state or county license fees. *Cf. Fresno,* 429 U.S. at 464-65, 97 S.Ct. at 705-06 (holding that a state tax imposed solely on lessees of land owned by tax-exempt entities is not discriminatory

---

[9]Because it found that Ordinance 1120 directly taxed the United States government, the district court did not decide whether the Jefferson County occupational tax discriminated against federal employees. *Acker,* 850 F.Supp. at 1548. We address the issue for the first time on appeal.

[10]*See also* Ordinance 1120, § 1(H) ("The word "county' shall mean Jefferson County, Alabama.").

because the law leaves such lessees "no worse off" than tenants who rent from landowners who are taxed).  Although employees subject to the Jefferson County tax in some instances may be taxed more than professionals subject to state professional fees, this slight difference in economic burden does not compel a finding of discrimination.  There is no evidence in the ordinance of "crippling obstruction of any of the Government's functions, no sinister effort to hamstring its power, not even the slightest interference with its property."  *City of Detroit v. Murray Corp. of Am.,* 355 U.S. 489, 495, 78 S.Ct. 458, 462, 2 L.Ed.2d 441 (1958).  Thus, the occupational tax does not discriminate unconstitutionally against federal employees.

2. Direct Tax on Federal Government

The Supreme Court has adopted a number of tests to determine whether a state tax falls upon the federal government directly, rather than upon a private individual dealing with the federal government.  An individual's employment with the federal government is insufficient to transform that person into a part of the federal government for the purpose of the intergovernmental tax immunity doctrine.  Instead, to qualify for tax immunity, the taxed entity must "actually "stand in the Government's shoes,' " *United States v. New Mexico,* 455 U.S. at 736, 102 S.Ct. at 1383 (quoting *City of Detroit v. Murray Corp.,* 355 U.S. at 503, 78 S.Ct. at 491) (separate opinion of Frankfurter, J., concurring in part and dissenting in part), or be " "so intimately connected with the exercise of a power or the performance of a duty' by the Government that taxation of it would be " "a direct interference with the

functions of government itself," ' " *id.* (quoting *James v. Dravo Contracting Co.,* 302 U.S. at 157, 58 S.Ct. at 219) (quoting *Metcalf & Eddy v. Mitchell,* 269 U.S. 514, 524, 46 S.Ct. 172, 174-75, 70 L.Ed. 384 (1926)).[11]

In this case, the federal judges must pay the occupational tax out of their own resources. If the tax had been imposed upon the Eleventh Circuit or the Northern District of Alabama, then the ordinance would tax directly the federal government. Article III judges, however, are federal officers rather than " "an arm of the Government,' " *id.* at 736-37, 102 S.Ct. at 1384 (alteration in original) (quoting *Department of Employment v. United States,* 385 U.S. 355, 359-60, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966)). The legal incidence of the occupational tax thus falls upon federal employees, not upon the federal government directly. Consequently, because Ordinance 1120 neither discriminates against federal employees nor taxes the United States directly, the county may apply the tax to Article III judges without violating the Supremacy

---

[11]Other formulations of this test state that, to tax the federal government directly, the tax must be levied against an entity " " "so assimilated by the Government as to become one of its constituent parts," ' " *New Mexico,* 455 U.S. at 736, 102 S.Ct. at 1384 (quoting *United States v. Boyd,* 378 U.S. 39, 47, 84 S.Ct. 1518, 1523, 12 L.Ed.2d 713 (1964) (quoting *United States v. Township of Muskegon,* 355 U.S. 484, 486, 78 S.Ct. 483, 485, 2 L.Ed.2d 436 (1958))), " " "so incorporated into the government structure as to become instrumentalities of the United States," ' " *id.* (quoting *Boyd,* 378 U.S. at 48, 84 S.Ct. at 1524), " "virtually ... an arm of the Government,' " *id.* at 736-37, 102 S.Ct. at 1384 (alteration in original) (quoting *Department of Employment v. United States,* 385 U.S. 355, 359-60, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966)), or " "integral parts of [a governmental department],' and "arms of the Government deemed by it essential for the performance of governmental functions,' " *id.* at 737, 102 S.Ct. at 1384 (alteration in original) (quoting *Standard Oil Co. v. Johnson,* 316 U.S. 481, 485, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611 (1942)).

Clause.

While the district court acknowledged that the *economic burden* of Ordinance 1120 was on the individual judges, it nevertheless concluded that the *legal incidence* of the tax was on the United States. The district court reasoned that a true income tax is laid upon the privilege of receiving income, which is the property of the taxpayer once it is received as compensation for his services. In contrast, a license or privilege tax is laid upon the privilege of practicing or engaging in one's trade, occupation or profession. Whereas an income tax levied on federal employees burdens the property of those employees, a license tax levied on federal employees burdens the functions of the federal government itself.

The district court concluded that

[t]he tax imposed by Ordinance 1120 is *not* an income tax as such is generally understood, nor is it any income tax under Alabama law. That is so because it is not, in fact, a tax upon the *receipt* of income, pay, or compensation ... but rather, is a license or privilege tax which finds its taxable event, or incidence, in the *performance* of a federal judicial function. Its incidence, thus, is upon the performance of judicial functions by a judicial officer, antecedent to the point that the salary therefor having been paid by the government becomes the property of the individual citizen of Alabama ... subject to the protection and benefits he receives as a citizen of Alabama.

*Acker,* 850 F.Supp. at 1547-48 (citations omitted). The court acknowledged that the occupational tax was measured by the judges' gross receipts; nevertheless, it held, "the actual event taxed (the legal incidence of the tax)" is the privilege of acting as a federal district judge. *Id.* at 1543. Hence, the tax constituted a direct tax on the United States, thereby violating the intergovernmental tax immunity doctrine.

Support for the view that Ordinance 1120 imposes a license tax

rather than an income tax can be found in the plain language of the ordinance.  The ordinance is entitled the "Occupational Tax of Jefferson County Alabama," and its stated purpose is to establish a "license or privilege tax on persons engaged in any vocation, occupation, calling or profession in Jefferson County who is not required by law to pay any license or privilege tax to either the State of Alabama or the County as set out herein."  Ordinance 1120. The ordinance requires the payment of "license fees" and makes it "*unlawful* for any person *to engage in or follow any vocation, occupation, calling or profession* ... without paying license fees." Ordinance 1120, § 2 (emphasis added).

Additionally, judicial interpretation of Ordinance 1120 and similar occupational taxes by the Alabama Supreme Court supports the claim that the Jefferson County tax is a license tax.  The Supreme Court of Alabama has held that Ordinance 1120 was enacted pursuant to a state law "authorizing [counties] to impose a privilege or license tax." *Bedingfield v. Jefferson County,* 527 So.2d 1270, 1274 (Ala.1988).  The court has also held that a city ordinance similar to the one at bar imposed a license tax rather than an income tax. *McPheeter v. City of Auburn,* 288 Ala. 286, 259 So.2d 833, 837 (1972).  In  *McPheeter,* the City of Auburn had imposed a tax upon the privilege of engaging in a trade, occupation or profession in the city and upon the privilege of using the city's facilities while so engaged;  the tax was measured based on a percentage of each taxpayer's gross salary or wages.   *Id.* 259 So.2d at 834-35.  The court reasoned that

> [t]he tax is occasioned when the taxpayer performs services
> within the Auburn city limits, and not when the taxpayer

receives income. Therefore, the ordinance taxes the privilege of working and the engagement of rendering services within the City of Auburn, and *it only measures the tax due by the amount of the taxpayers' gross receipts which result from such privilege*.... It is evident that the tax is not even measured by a person's income, but only by his salary or wages earned. So in no sense can the Auburn tax be considered an income tax.

*Id.* 259 So.2d at 837 (citation omitted) (emphasis added).[12]

Nevertheless, in deciding whether Ordinance 1120 taxes the judges' income or the federal judicial function itself, we are not constrained by the formal phrasing of the Jefferson County Commission or the labels assigned by state courts.

[I]n passing on the constitutionality of a state tax "we are concerned *only* with its practical operation, not its definition or the precise form of descriptive words which may be applied to it." *Lawrence v. State Tax Comm'n,* 286 U.S. 276, 280, 52 S.Ct. 556, 557, 76 L.Ed. 1102. Consequently in determining whether these taxes violate the Government's constitutional immunity we must look through form and behind labels to substance.

*City of Detroit v. Murray Corp. of Am.,* 355 U.S. at 492, 78 S.Ct. at 460 (emphasis added); *cf. Railway Express Agency v. Virginia,* 347 U.S. 359, 363, 74 S.Ct. 558, 561, 98 L.Ed. 757 (1954) (stating in the context of the Commerce Clause that " "neither the state

---

[12]However, the effect of *McPheeter* is not altogether clear. Even as it ruled that the Auburn ordinance imposed a license tax rather than an income tax, the *McPheeter* court also held that the "license tax" did not violate the intergovernmental tax immunity doctrine as applied to either state or federal employees. *McPheeter,* 259 So.2d at 836. Auburn University employees had argued that they "perform[ed] essential functions for the operation of [the state] government," *id.* 259 So.2d at 835; accordingly, as applied to them, the Auburn license tax was a direct burden upon the Alabama state government. The Alabama Supreme Court rejected this argument and reasoned that the license tax created no condition precedent to state employment. *Id.* 259 So.2d at 835-36 (" "Payment of the tax is not a prerequisite to being appointed or elected, nor does continuation to the state position depend on payment of the tax.' " (quoting *Hamilton v. City and County of Denver,* 176 Colo. 6, 490 P.2d 1289, 1293 (1971))).

courts nor the legislatures, by giving the tax a particular name or by the use of some form of words, can take away our duty to consider its nature and effect,' in which inquiry "we are concerned only with its practical operation' " (citations omitted)).

The critical question, therefore, is whether the practical effect of Ordinance 1120 is to tax the income that federal judges derive from the performance of their judicial functions or to impose a license tax as a precondition to the performance of those functions.[13]   Viewed in this light, the practical effect of

_____

[13]Although the Supreme Court has not defined a license tax in the context of the intergovernmental tax immunity doctrine, it has done so in the context of the First Amendment.  In *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), the Court considered a city ordinance which required solicitors to pay a flat rate license tax before they could operate in the city.  The Court struck down the ordinance as facially unconstitutional, noting that "[a] state may not impose a charge for the enjoyment of a right granted by the federal constitution."  *Id.* at 113, 63 S.Ct. at 875.  In doing so, the Court described at length "the nature of this tax":

> It is a license tax—a flat tax imposed on the exercise of a privilege granted by the Bill of Rights.... *[T]he license tax is fixed in amount and unrelated to the scope of the activities of petitioners or to their realized revenues.*  It is not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question.  It is in no way apportioned.  It is a flat license tax levied and collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the First Amendment. *Accordingly, it restrains in advance those constitutional liberties* of press and religion and inevitably tends to suppress their exercise.  That is almost uniformly recognized as the inherent vice and evil of this flat license tax.

*Id.* at 113-14, 63 S.Ct. at 875 (citations and footnote omitted) (emphasis added).  The Court was careful to distinguish a license tax from a tax on the income of one who engages in religious activities.  "It is one thing to impose a tax on the income or property of a preacher.  It is quite another thing to exact a tax from him for the privilege of delivering a sermon."  *Id.* at 112, 63 S.Ct. at

Ordinance 1120 is that of an income tax, rather than a license tax. The ordinance does not impose a flat fee on those performing federal functions, nor does it create a condition precedent to the performance of those functions.[14] By the terms of the ordinance, the required license fees "shall be measured by one-half percent (1/2%) of the gross receipts" of each person subject to the tax. Ordinance 1120, § 2. Thus, it is only if a federal employee is compensated that he or she becomes liable to Jefferson County for the occupational tax. A federal employee in Jefferson County could refuse to pay any license fees and still lawfully perform his or her federal duties under the ordinance *so long as that employee received no income from performing those duties.* Consequently, the occupational tax is not a *precondition* to the performance of any federal government functions but a *consequence* of receiving any compensation therefor.[15]

---

874; *see also Jimmy Swaggart Ministries v. Board of Equalization,* 493 U.S. 378, 386-87, 110 S.Ct. 688, 694, 107 L.Ed.2d 796 (1990) (distinguishing between sales and use taxes and flat license taxes).

[14]Significantly, Jefferson County probably could not obtain an injunction, pursuant to Ordinance 1120, to prevent a federal judge from "unlawfully" performing his or her judicial functions without paying the required license fee. Before granting such equitable relief, a court would have to find that Jefferson County would suffer irreparable harm in the absence of an injunction and that the county has no adequate remedy at law. *United Steelworkers of Am. v. USX Corp.,* 966 F.2d 1394, 1404 (11th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1386, 122 L.Ed.2d 762 (1993). It is doubtful that Jefferson County could make either showing in a tax collection case: the loss of revenues from a single taxpayer is not likely to cause the county irreparable harm; further, garnishing the taxpayer's wages would afford the county an adequate remedy at law.

[15]This result is not altered by the fact that Article III guarantees that the salaries of federal judges shall not be diminished during their tenure. *See supra* note 5. To contend

As suggested by the Alabama Supreme Court in *McPheeter,* it may be argued that Ordinance 1120 directly taxes the performance of government functions and is only measured by the income which results from the exercise of that privilege. The Supreme Court, however, repeatedly has distinguished between the taxation of a constitutional right and the taxation of receipts flowing from the exercise of a constitutional right; it has held that the latter is permissible. *See, e.g., Jimmy Swaggart Ministries v. Board of Equalization,* 493 U.S. 378, 390-92, 110 S.Ct. 688, 696-97, 107 L.Ed.2d 796 (1990) (holding that a state sales tax based on a taxpayer's realized revenues constitutionally may be imposed on religious activity); *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 229, 107 S.Ct. 1722, 1727, 95 L.Ed.2d 209 (1987) (noting that "a genuinely nondiscriminatory tax on the receipts of newspapers would be constitutionally permissible"). Because Ordinance 1120 imposes not even a nominal burden on the uncompensated practice of any vocation, occupation, calling or profession, no matter how extensive, we conclude that the tax is not merely measured by but actually laid upon the taxpayer's receipts. Accordingly, the practical effect of the ordinance is that of an income tax; the ordinance does not directly tax the operations of the federal government.

B. *Compensation Clause*

---

that the performance of federal judicial functions is inseparable from compensation under Article III (and thus taxation of the latter implies taxation of the former) is to argue that the intergovernmental tax immunity doctrine also prevents state, perhaps even federal, income taxation of the federal judiciary. This argument is unavailing. *See O'Malley v. Woodrough,* 307 U.S. 277, 282, 59 S.Ct. 838, 840, 83 L.Ed. 1289 (1939).

The Compensation Clause provides that the compensation of Article III judges shall not be diminished during their tenure in office. U.S. Const. art. III, § 1; for text of Compensation Clause, see *supra* note 6. In order to prevail on a Compensation Clause claim, the judges must show a "direct, discriminatory assault on judicial independence, [a] "plan fashioned by the political branches ... ineluctably operating to punish the judges *qua* judges....' " *Duplantier v. United States,* 606 F.2d 654, 669 (5th Cir.1979) (quoting *Atkins v. United States,* 556 F.2d 1028, 1054, 214 Ct.Cl. 186, *cert. denied,* 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978)) (second and third alterations in original), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981). " "Indirect, nondiscriminatory diminishments of judicial compensation, those which do not amount to an assault upon the independence of the third branch or any of its members, fall outside the protection of the Compensation Clause....' " *Id.* (quoting *Atkins,* 556 F.2d at 1045).

The district court concluded that the Jefferson County occupational tax constitutes a diminishment of the judges' salaries. The court relied upon its earlier conclusion that Ordinance 1120 "is not, in fact, a tax upon the *receipt* of income, pay, or compensation, (the taxable event held in *O'Malley* to be constitutionally permissible), but rather is a license or privilege tax which finds its taxable event, or incidence, in the *performance* of a federal judicial function." *Acker,* 850 F.Supp. at 1547. Because the incidence of the tax is thus "antecedent to the point that the salary therefor having been paid by the government becomes

the property of the [judges]," the court reasoned, the ordinance diminished rather than taxed the judges' salaries.

As discussed *supra,* however, the practical effect of Ordinance 1120 is that of an income tax. It is well established that the Compensation Clause does not forbid the federal government from levying an income tax on federal judges. *O'Malley v. Woodrough,* 307 U.S. 277, 282, 59 S.Ct. 838, 840, 83 L.Ed. 1289 (1939). Moreover, Judge Acker and Judge Clemon have failed to show that the judges are being taxed purely for their judicial function. By its terms, Ordinance 1120 taxes persons "holding ... *any kind of office or position* either by election or appointment, by any federal, state, county or city officer or employee," Ordinance 1120, § 1(C) (emphasis added); this provision applies equally to the executive and legislative branches as well as to the judicial branch. Consequently, the Jefferson County occupational tax " "do[es] not amount to an assault upon the independence of the third branch or any of its members,' " *Duplantier,* 606 F.2d at 669 (quoting *Atkins,* 556 F.2d at 1045), and as such its application to Article III judges is not barred by the Compensation Clause.

### III. CONCLUSION

The district court held that the intergovernmental tax immunity doctrine and the Compensation Clause exempt federal judges from Jefferson County's occupational tax.[16] The occupational tax

---

[16]We reject without discussion the judges' alternative argument that federal judges, as practicing attorneys, are subject to state bar fees and thus are exempt from Ordinance 1120. *See* Ala.Code § 40-12-49 ("Each attorney *engaged in the practice of law* shall pay an annual license tax to the state, but none to the county." (emphasis added)); Ala.Code § 34-3-11 (prohibiting the practice of law by judges). The Committee on

neither discriminates against federal judges, nor does it impede the operation of the federal judiciary. Additionally, the tax does not punish judges *qua* judges. Therefore, the Jefferson County tax, as applied to Article III judges, is valid. We REVERSE the district court's opinion and REMAND for a determination of the taxes owed.

TJOFLAT, Chief Judge, dissenting:

I respectfully dissent.

The main issue to be decided in this case "is whether the Jefferson County tax is "imposed directly on' the federal government." *Jefferson County v. Acker,* 850 F.Supp. 1536, 1541 (N.D.Ala.1994). I agree with the district court's reasoning and its conclusion that "the Jefferson County occupational tax is imposed directly upon a governmental function—the performance in the federal courthouse in Birmingham, Alabama of federal judicial functions. Those functions are the actual event taxed (the legal incidence of the tax)." *Id.* at 1543.

This is not a question of the taxation of an independent contractor or agency official (parties in other cases challenging taxes). *See, e.g., James v. Dravo Contracting Co.,* 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937). The federal judiciary is surely "so assimilated by the Government as to become one of its constituent parts." *Ante* at 3160 n. 11 (quoting cases). "Here, the tax is on the privilege of performing the federal judicial

---

Codes of Conduct of the Judicial Conference of the United States encourages, but does not require, federal judges to participate in local bar associations. *See* Advisory Opinion No. 85, Committee on Codes of Conduct (June 14, 1991).

function itself—one of the three grand (Legislative; Executive; Judicial) federal functions." *Acker,* 850 F.Supp. at 1542. Article III judges are not independent contractors. The judiciary is not merely a building or an administrative organizational body—it is "an arm of the Government." *Ante* at 3160 (quoting cases). The individual judges who administer justice *are* the judicial branch of government. Taxation (based on income or an alternative measure) of the *performance* of federal judges is, therefore, taxation of the federal government.

Additionally, I would find for the judges on the Compensation Clause claim because the Jefferson County occupational tax is a "direct, discriminatory assault on judicial independence." *Ante* at 3163 (quoting cases). The court's opinion does not address the onerous recordkeeping and reporting requirements imposed by Ordinance 1120. The ordinance requires every judge to divide his or her performance[1] within Jefferson County from those functions performed outside the county and to allocate compensation earned only within Jefferson County for tax assessment. Thirty-one counties comprise the Northern District of Alabama. 28 U.S.C. § 81(a).[2] Although Judge Acker and Judge Clemon maintain chambers in

---

[1] One wonders how a judge is even to define "performance" for purposes of compliance with the ordinance. Does thinking about a case that is not being prosecuted in Jefferson County while driving home in Jefferson County constitute performance? Does carrying court documents across Jefferson County to get to another county in which court is being held constitute "performance within Jefferson County"? Does work on a case brought in another county but which has an impact on Jefferson County fall within the meaning of the ordinance?

[2] The Northern District of Alabama encompasses Jefferson County along with the counties of Colbert, Franklin, Lauderdale, Cullman, Jackson, Lawrence, Limestone, Madison, Morgan, Blount,

Jefferson County, they routinely perform judicial functions in other counties[3] and their decisions affect citizens of other counties. Ordinance 1120 creates an administrative nightmare that "impede[s] the operation of the federal judiciary." *Ante* at 3164.

Because this tax is a direct assault on the administration of justice, I dissent.

---

Shelby, Calhoun, Clay, Cleburne, Talladega, Bibb, Greene, Pickens, Sumter, Tuscaloosa, Cherokee, De Kalb, Etowah, Marshall, Saint Clair, Fayette, Lamar, Marion, Walker, and Winston.

[3]Congress has mandated that, in addition to Birmingham, court be held at Florence, Huntsville, Decatur, Anniston, Tuscaloosa, Gadsden, and Jasper. 28 U.S.C. § 81(a).